No. 23-9509

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

———————————

STATE OF UTAH,

*Petitioner*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Respondents*.

———————————

PETITION FOR REVIEW OF A FINAL AGENCY ACTION OF THE UNITED
STATES ENVIRONMENTAL PROTECTION AGENCY

———————————

**RESPONDENTS' OPPOSED MOTION TO TRANSFER THE PETITION
FOR REVIEW TO THE D.C. CIRCUIT OR DISMISS BASED ON
IMPROPER VENUE**

———————————

*Of Counsel:*
ROSEMARY HAMBRIGHT KABAN
DANIEL P. SCHRAMM
   *Office of the General Counsel*
   *U.S. Environmental Protection*
     *Agency*
   *Washington, DC*

TODD KIM
   *Assistant Attorney General*

ALEXANDRA L. ST. ROMAIN
   *U.S. Department of Justice*
   *Environment and Natural Resources*
     *Division*
   *P.O. Box 7611*
   *Washington D.C. 20044-7611*

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................... i

TABLE OF AUTHORITIES .............................................................................. ii

INTRODUCTION ............................................................................................1

BACKGROUND ..............................................................................................3

    I.      National Ambient Air Quality Standards ..............................................3

    II.     The Clean Air Act's Venue Provision ..................................................4

    III.    EPA's Disapproval of SIPs Addressing the Good Neighbor
          Provision for the 2015 Ozone NAAQS..................................................5

ARGUMENT ...................................................................................................9

    I.      This Court Should Confirm the Proper Venue Before
          Considering Utah's Pending Motion to Stay the Final Rule................9

    II.     This Circuit is Not the Proper Forum for Reviewing the Final
          Rule.......................................................................................................9

          A.     The Final Rule Is Nationally Applicable. ..................................10

          B.     EPA Properly Made and Published a Reasonable Finding
                  that the Final Rule Is Based on a Determination of
                  Nationwide Scope or Effect. ......................................................14

CONCLUSION ...............................................................................................19

CERTIFICATES OF COMPLIANCE....................................................................20

CERTIFICATE OF SERVICE .............................................................................21

## TABLE OF AUTHORITIES

### CASES

*ABF Freight Sys., Inc. v. NLRB*,
510 U.S. 317 (1993) ......................................................................................14, 15

*ATK Launch Systems, Inc. v. EPA*,
651 F.3d 1194 (10th Cir. 2011) .............................................................5, 9, 10, 12

*Chevron U.S.A. Inc. v. EPA*,
45 F.4th 380 (D.C. Cir. 2022) ...............................................................................10

*EME Homer City Generation, L.P. v. EPA*,
795 F.3d 118 (D.C. Cir. 2015) .................................................................................6

*EPA v. EME Homer City Generation, L.P.*,
572 U.S. 489 (2014) .............................................................................................4, 6

*Gen. Motors Corp. v. United States*,
496 U.S. 530 (1990) .................................................................................................3

*Massachusetts v. EPA*,
549 U.S. 497 (2007) ...............................................................................................15

*Michigan v. EPA*,
213 F.3d 663 (D.C. Cir. 2000) .................................................................................6

*Midwest Ozone Group v. EPA*,
__ F.4th __, No. 21-1146, 2023 WL 2337782 (D.C. Cir. Mar. 3, 2023) .............6

*New York v. EPA*,
781 F. App'x 4 (D.C. Cir. 2019) ..............................................................................6

*NRDC v. EPA*,
512 F.2d 1351 (D.C. Cir. 1975) ............................................................................14

*NRDC v. Thomas*,

838 F.2d 1224 (D.C. Cir. 1988) ...........................................................13

*S. Ill. Power Coop. v. EPA*,
   863 F.3d 666 (7th Cir. 2017) ...........................................11, 12, 13

*Texas v. EPA*,
   No. 10-60961, 2011 WL 710598 (5th Cir. Feb. 24, 2011) ..................16

*Texas v. EPA (2020 Texas)*,
   983 F.3d 826 (5th Cir. 2020) ...........................................................15, 16

*Utah v. EPA*,
   767 F.3d 1257 (10th Cir. 2014) .............................................................10

*Westar Energy v. EPA*,
   608 F. App'x 1 (D.C. Cir. 2015) .............................................................6

*W. Va. Chamber of Comm. v. Browner*,
   No. 98-1013, 1998 WL 827315 (4th Cir. Dec. 1, 1998)..........................11

*WildEarth Guardians v. EPA*,
   751 F.3d 649 (D.C. Cir. 2014) .............................................................15

*Wisconsin v. EPA*,
   938 F.3d 303 (D.C. Cir. 2019) .............................................................6

**STATUTES**

42 U.S.C. §§ 7401-7671q ...........................................................................1

42 U.S.C. § 7401(b)(1)................................................................................3

42 U.S.C. § 7409(b)(1)................................................................................3

42 U.S.C. § 7410(a)(1)................................................................................3

42 U.S.C. § 7410(a)(2)(D)(i)(I) ...............................................................1, 4

42 U.S.C. § 7410(c)(1)................................................................................4

42 U.S.C. § 7410(k)(3)................................................................................4

42 U.S.C. § 7607(b)(1)............................... 2, 4, 5, 7, 8, 9, 10, 13, 14, 16

**FEDERAL REGISTER**

76 Fed. Reg. 48208 (Aug. 8, 2011)..............................................................6

80 Fed. Reg. 65292 (Oct. 26, 2015)............................................................5

81 Fed. Reg. 74504 (Oct. 26, 2016)............................................................6

86 Fed. Reg. 23054 (Apr. 30, 2021) ...........................................................6

87 Fed. Reg. 31470 (May 24, 2022) ...........................................................8

88 Fed. Reg. 9336 (Feb. 13, 2023) ................ 1, 4, 6, 7, 8, 10, 11, 12, 14, 15, 16, 17

**LOCAL RULES**

Local Rule 27.3(A)(3)(a)…………………………………………………..2

**INTRODUCTION**

Because air pollutants heed no state boundaries, the Clean Air Act ("CAA" or the "Act"), 42 U.S.C. §§ 7401-7671q, requires states to ensure that their emissions do not significantly contribute to the air quality problems of other states (the "Good Neighbor Provision"), *id.* § 7410(a)(2)(D)(i)(I).  States submit plans addressing the Good Neighbor Provision to the U.S. Environmental Protection Agency for review, and those plans may be approved only if they comply with the provision's requirements.  *Id.* § 7410(a)(1), (k)(3).  For the latest ozone air quality standards, EPA evaluated each state's plan to address the Good Neighbor Provision, reasonably determined that 21 states' plans failed to comply with the Good Neighbor Provision, and issued a final rule disapproving them.  Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9336, 9338 (Feb. 13, 2023) ("Final Rule").

Petitioner State of Utah's ("Utah") petitioned for review of the Final Rule in this Court.  Respondents U.S. Environmental Protection Agency and Michael S. Regan, Administrator of the U.S. Environmental Protection Agency (collectively,

"EPA"), move to transfer the petition for review to the D.C. Circuit or, alternatively, dismiss for improper venue.[1]

Because this is a final action issued under the CAA, the Act's circuit-selection provision, *id.* § 7607(b)(1), determines the proper venue for petitions for review of the Final Rule. Under § 7607(b)(1), petitions for review of actions that are "nationally applicable" or that EPA found and published are based on determinations of "nationwide scope or effect" may be filed only in the D.C. Circuit. *Id.*

The Final Rule may be challenged only in the D.C. Circuit. To address the nationwide problem of interstate pollution, EPA, in the same action, applied a uniform national approach to evaluate each state's plan and ensure equity among states. The Final Rule is plainly "nationally applicable." Alternatively, EPA expressly found and published that the Final Rule is based on a determination of "nationwide scope or effect," and that finding is entitled to deference.

---

[1] This motion is timely because there is good cause for the slight delay in filing beyond the suggested 14-day window. Local Rule 27.3(A)(3)(a). As described below, Utah challenged EPA's rule the same day it was published, on February 13, 2023. Since Utah's filing, numerous petitioners have challenged the same rule in the Fifth, Sixth, and Eighth Circuits. Along with this filing, EPA is also filing venue motions in this and other Circuits in order to consolidate all challenges to the Final Rule in the proper venue and has been responding to numerous stay motions. EPA has acted as expeditiously as practicable in moving to transfer these cases in a coordinated fashion.

Accordingly, the petition for review of the Final Rule was improperly filed in this

Court and must be dismissed or transferred to the D.C. Circuit.[2]

## BACKGROUND

### I.    National Ambient Air Quality Standards

The Clean Air Act seeks to "protect and enhance the quality of the Nation's

air resources so as to promote the public health and welfare." 42 U.S.C.

§ 7401(b)(1). To that end, the Act controls air pollution through a system of

shared federal and state responsibility. *See Gen. Motors Corp. v. United States*,

496 U.S. 530, 532 (1990). The Act directs EPA to set National Ambient Air

Quality Standards ("NAAQS") for widely occurring pollutants, including ozone.

The NAAQS establish permissible concentrations of those pollutants in the

ambient air. 42 U.S.C. § 7409(b)(1). Within three years after the promulgation or

revision of a NAAQS, each state must prepare a state implementation plan ("SIP")

for EPA's review, "which provides for the implementation, maintenance, and

enforcement" of the NAAQS within the state. *Id.* § 7410(a)(1).

SIPs addressing new or revised NAAQS must, among other requirements,

comply with the Good Neighbor Provision and prohibit emissions from within the

state that "contribute significantly to nonattainment" or "interfere with

---

[2] Based on discussions with Utah's counsel, EPA's counsel expects Utah will file
an opposition to this motion.

maintenance" of the NAAQS in other states.  *Id.* § 7410(a)(2)(D)(i)(I).  The Good

Neighbor Provision addresses the plain fact that air pollutants do not heed state

boundaries.  Often—and especially in the case of ozone—pollutants generated by

upwind sources cross multiple state boundaries, leaving downwind states to bear

the brunt of addressing their states' unsafe air quality resulting from another states'

emissions.  *EPA v. EME Homer City Gen., L.P.*, 572 U.S. 489, 496 (2014); Final

Rule, 88 Fed. Reg. at 9339-40.

If a SIP submission does not comply with the Good Neighbor Provision,

EPA may not approve it.  42 U.S.C. § 7410(k)(3).  Instead, it must disapprove the

submission and promulgate a federal plan to fill the gaps in the SIP.  *Id.*

§ 7410(c)(1).

## II.    The Clean Air Act's Venue Provision

When a petitioner seeks review of an EPA final action taken pursuant

to the CAA, such as a SIP disapproval, 42 U.S.C. § 7607(b)(1) makes venue

exclusive in a single court of appeals.  To determine which circuit court, the Act

classifies final actions into three categories.  First, a challenge to a "nationally

applicable" EPA final action "may be filed only in the" D.C. Circuit.  *Id.*  Second,

a petition for review of an EPA final action "which is locally or regionally

applicable may be filed only in the" court of appeals for the appropriate regional

circuit.  *Id.*  Third, if, however, the locally or regionally applicable action "is based

on a determination of nationwide scope or effect and if in taking such action the Administrator [of EPA] finds and publishes that such action is based on such a determination," then any petition for review "may be filed only in the" D.C. Circuit. *Id.*; *see also see ATK Launch Sys. Inc., v. EPA*, 651 F.3d 1194, 1196-97 (10th Cir. 2011). Thus, Congress, which has plenary authority to determine venue in the inferior federal courts, determined in § 7607(b)(1) to assign venue to challenges to EPA actions taken under the CAA based exclusively on the nature of EPA's "final action." *See* 42 U.S.C. § 7607(b)(1).

### III.  EPA's Disapproval of SIPs Addressing the Good Neighbor Provision for the 2015 Ozone NAAQS

On October 1, 2015, EPA revised the ozone NAAQS, lowering the permissible concentration of ozone in the ambient air. National Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 65292 (Oct. 26, 2015) ("2015 ozone NAAQS"). This revision in turn required each state to submit a SIP within three years to implement, attain, and enforce the 2015 ozone NAAQS. *See* 42 U.S.C. § 7410(a)(1). To evaluate whether the SIP submissions covered by the Final Rule met states' obligations under the Good Neighbor Provision, EPA reviewed each submission using a 4-step interstate transport framework.

EPA has used iterations of the same 4-step framework to evaluate compliance with the Good Neighbor Provision for prior ozone NAAQS.[3]  *See, e.g.,* Federal Implementation Plans: Interstate Transport of Fine Particulate Matter and Ozone and Correction of SIP Approvals, 76 Fed. Reg. 48208 (Aug. 8, 2011) (addressing the 1997 ozone and 2006 fine particulate matter NAAQS); Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS, 81 Fed. Reg. 74504 (Oct. 26, 2016) (addressing the 2008 ozone NAAQS); Revised CSAPR Update for the 2008 Ozone NAAQS, 86 Fed. Reg. 23054 (Apr. 30, 2021) (addressing the 2008 ozone NAAQS).  EPA applies this "nationally uniform" approach for evaluating each state's impact on downwind states' air quality because addressing interstate transport of ozone requires national consistency to avoid inequitable results among states.  Final Rule, 88 Fed. Reg. at 9337-38, 9339-40.

The 4-step transport framework proceeds as follows: (1) identify nonattainment and maintenance "receptors," which are air quality monitoring sites that are projected to have problems attaining or maintaining the NAAQS,

---

[3] Additionally, the Supreme Court and D.C. Circuit have reviewed and upheld this framework as being consistent with the requirements of the Good Neighbor Provision.  *EME Homer City Gen., L.P.,* 572 U.S. 489; *Midwest Ozone Grp. v. EPA*, No. 21-1146, __ F.4th __, 2023 WL 2337782 (D.C. Cir. Mar. 3, 2023); *Wisconsin v. EPA*, 938 F.3d 303 (D.C. Cir. 2019); *New York v. EPA*, 781 F. App'x 4 (D.C. Cir. 2019); *EME Homer City Gen., L.P. v. EPA*, 795 F.3d 118 (D.C. Cir. 2015); *Westar Energy, Inc. v. EPA*, 608 F. App'x 1, 3 (D.C. Cir. 2015); *see also Michigan v. EPA*, 213 F.3d 663 (D.C. Cir. 2000).

respectively; (2) identify upwind states that impact air quality problems in

downwind states sufficiently that the states are considered "linked"; (3) identify

any necessary emissions reductions to eliminate each upwind state's significant

contribution to nonattainment or interference with maintenance of the NAAQS at

the locations identified in Step 1; and (4) adopt permanent and enforceable

measures needed to achieve those emissions reductions. *Id.* at 9338. In applying

this framework to the covered SIPs, EPA also gave full consideration to any

alternative approach states proposed in their submissions and evaluated them with

an eye to ensuring national consistency. *Id.* at 9338, 9381.

To evaluate SIP submissions for the 2015 ozone NAAQS under this 4-step

framework, EPA relied on "a common core of nationwide policy judgments and

technical analysis concerning the interstate transport of pollutants throughout the

continental U.S." to identify nonattainment and maintenance receptors and

quantify upwind states' contributions to ozone air quality problems downwind.

*See id.* at 9380. Upon evaluation, EPA proposed to disapprove SIP submissions

from 23 states, including Utah, for failure to meet the Good Neighbor Provision,

and ultimately finalized its disapproval for 21 states that span eight of the ten EPA

Regions and ten federal judicial circuits in its Final Rule. *Id.* at 9337. In the Final

Rule, EPA stated that under § 7607(b)(1), any petition for judicial review must be

filed in the D.C. Circuit because the rule is nationally applicable, or, in the event a

court determined the Final Rule to be locally or regionally applicable, because

EPA made and published a finding that the Final Rule is based on a determination

of nationwide scope or effect. *Id.* at 9380.[4]

On February 13, 2023, Utah petitioned for review of the Final Rule. *See*

Utah Pet., ECF Doc. No. 010110812455. Utah public utility companies and the

State of Oklahoma also challenge this rule in separate matters before this Court.

Petition for Review, *Pacificorp v. EPA*, No. 23-9512 (10th Cir. Feb. 23, 2023);

Petition for Review, *Utah Associated Mun. Power Sys. v. EPA*, No. 23-9520 (10th

Cir. Mar. 15, 2023); Petition for Review, *Oklahoma v. EPA*, No. 23-9514 (10th

Cir. Mar. 2, 2023). Thus far, petitions for review of the Final Rule have also been

filed in the Fifth, Sixth, and Eighth Circuits[5] and EPA has filed, or intends to file,

similar motions to transfer to the D.C. Circuit or dismiss those petitions, as well.

---

[4] In proposing to disapprove Utah's SIP, EPA previewed that it anticipated its final action would be nationally applicable, or, to the extent the final action was regionally or locally applicable, would be based on a determination of nationwide scope or effect within the meaning of § 7607(b)(1). Air Plan Disapproval; Utah; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 87 Fed. Reg. 31470, 31484 & n.65 (May 24, 2022).

[5] *See* Petition for Review, *Texas v. EPA*, No. 23-60069 (5th Cir. Feb. 14, 2023); Petition for Review, *Kentucky v. EPA*, No. 23-3216 (6th Cir. Mar. 13, 2023); Petition for Review, *Arkansas v. EPA*, No. 23-1320 (8th Cir. Feb. 16, 2023).

## ARGUMENT

### I.      This Court Should Confirm the Proper Venue Before Considering Utah's Pending Motion to Stay the Final Rule.

EPA respectfully requests that the Court defer considering Utah's stay motion pending its consideration of this venue motion.  As detailed above, multiple petitioners have challenged the Final Rule in four different regional courts. Additionally, Utah moved to stay the Final Rule pending review, as did several petitioners in the Fifth Circuit.  Utah Stay Mot., ECF Doc. No. 010110823083; Texas & Indus. Stay Mots., No. 23-60069 (5th Cir. Mar. 3, 2023), ECF Doc Nos. 31, 32-1.  Deciding venue now and deferring consideration of Utah's stay motion conserves judicial resources by mitigating the risk of (1) inconsistent results among regional courts and (2) multiple courts having to adjudicate Utah's stay motion. Therefore, EPA respectfully requests that this Court confirm the proper venue first—which, as explained below, is the D.C. Circuit.

### II.     This Circuit is Not the Proper Forum for Reviewing the Final Rule.

The CAA's venue provision is unambiguous—when a petitioner seeks review of a final action that is "nationally applicable," or a final action that is locally or regionally applicable but for which EPA makes and publishes a finding that the action is based on a determination of "nationwide scope or effect," it must bring its challenge in the D.C. Circuit.  42 U.S.C. § 7607(b)(1).  Accordingly, this

9

Court is not the proper forum for this petition for review.  The Final Rule is

"nationally applicable," and even if the Court concludes it is not, EPA made and

published a finding that the Final Rule is "based on a determination of nationwide

scope or effect."  *Id.*  Therefore, this petition should be transferred[6] to the D.C.

Circuit or dismissed[7] because this Court is not the proper forum.

> **A.    The Final Rule Is Nationally Applicable.**

A petition for review that challenges a "nationally applicable" EPA final

action under the CAA may be filed "*only* in the United States Court of Appeals for

the District of Columbia."  42 U.S.C. § 7607(b)(1) (emphasis added); *see also ATK

Launch Sys.*, 651 F.3d at 1196-97.  Whether an action is "nationally applicable" is

a narrow inquiry based on "the face of the rule, rather than its practical effect."  *Id.*

at 1197.  The inquiry turns on the nature of the agency action, not the nature of a

petitioner's challenge.  *Id.*

---

[6] If the Court concludes that the D.C. Circuit is the proper forum for this petition
for review, it may transfer the petition.  *See ATK Launch Sys.*, 651 F.3d at 1196-97
n.1.

[7] While this Court has held that the sixty-day deadline in § 7607(b)(1) is
jurisdictional, *Utah v. EPA*, 767 F.3d 1257, 1258-60 (10th Cir. 2014), it has not
squarely addressed whether the circuit-selection provisions in § 7607(b)(1) are
jurisdictional.  Even if these provisions are not jurisdictional, the Court may
dismiss the petition.  *See Chevron U.S.A. Inc. v. EPA*, 45 F.4th 380, 382 (D.C. Cir.
2022).  Notably, Utah may cure any potential prejudice from dismissal by filing a
petition for review in the proper venue before the sixty-day deadline of April 14,
2023.  *See* Final Rule, 88 Fed. Reg. at 9381.

On its face, the Final Rule is nationally applicable.  The Final Rule applies a uniform and nationally consistent approach to plans submitted by states across the country, disapproving SIPs from 21 states throughout eight of the ten EPA Regions and ten federal judicial circuits.  Final Rule, 88 Fed. Reg. at 9380; *see also, e.g.*, *ATK Launch Sys.*, 651 F.3d at 1200 (transferring challenge to an action designating portions of 18 states as failing to comply with a NAAQS because it employed a single uniform regulatory approach across many states nationwide); *S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 671 (7th Cir. 2017) (transferring challenge to an action "of broad geographic scope containing air quality attainment designations covering 61 geographic regions across 24 states," which was "promulgated pursuant to a common, nationwide analytical method"); *W. Va. Chamber of Comm. v. Browner*, No. 98-1013, 1998 WL 827315, at *6-7 (4th Cir. Dec. 1, 1998) (transferring challenge to an action finding that 22 states' SIPs were inadequate because EPA applied a "common legal interpretation" and common analysis to its decision).

As in these prior cases, the D.C. Circuit is the only appropriate venue to challenge the Final Rule.  EPA employed its "nationally consistent 4-step interstate transport framework" to evaluate each state's obligations under the Good Neighbor Provision for the 2015 ozone NAAQS.  Final Rule, 88 Fed. Reg. at 9380.  EPA explained that ozone transport presents a "collective contribution" challenge in

11

which many smaller contributors across a broad region combine to generate a downwind air quality problem.  *Id.* at 9340, 9342.  Given the "interdependent nature of interstate pollution transport," EPA applied "a uniform legal interpretation and common, nationwide analytical methods," *id.*, and employed "a consistent set of policy judgments across all states for purposes of evaluating interstate transport obligations," *id.* at 9339.  Even when EPA evaluated an individual state's arguments for the use of alternative approaches or data, it did so "with an eye to ensuring national consistency and avoiding inconsistent or inequitable results among upwind states . . . and between upwind and downwind states."  *Id.* at 9381.  Because the Final Rule applies a uniform methodology and legal interpretation to SIP submissions across a vast geographic area, the rule is nationally applicable.  *See ATK Launch Sys.*, 651 F.3d at 1197-98 (transferring challenge to nationally applicable action based in part on "uniform process and standard" and "methodology" used in evaluating SIPs addressing Good Neighbor Provision for particulate matter NAAQS).

It makes no difference that Utah purports to challenge the effects of the Final Rule only as applied to Utah's SIP.  Utah Pet. at 2.  To reiterate, the question here is whether the action itself is nationally applicable, not whether the nature and scope of the arguments raised or relief sought by a petitioner are nationally applicable.  *See ATK Launch Sys.*, 651 F.3d at 1198-99; *see also S. Ill. Power*

*Coop.*, 863 F.3d at 668 (holding that venue is proper in the D.C. Circuit for a challenge to a nationally applicable rule despite the localized nature of the petition for review).  A contrary approach for what constitutes an action of "national applicability" would needlessly complicate the venue analysis and create difficult line-drawing problems.  *See NRDC v. Thomas*, 838 F.2d 1224, 1249 (D.C. Cir. 1988) (rejecting argument that the de facto scope of regulation is controlling for purposes of determining venue under § 7607(b)(1) and noting that, otherwise, the "choice of the correct forum might raise complex factual and line-drawing problems," which would be "a complication of the jurisdictional test [that] would waste time and serve little purpose").  Even if the nature of Utah's challenge were relevant to the question of forum (which it is not), the merits arguments that Utah could make in this case would be inextricably intertwined with arguments applicable to challenges to all other SIP disapprovals in the Final Rule because the disapprovals were based on a common EPA rationale and methodology.  *See infra* n.9 (citing several examples from the Final Rule where EPA disapproved SIP submissions based on the same rationale).

At bottom, by filing the petition for review in this Court, Utah invites multiple circuits to review concurrently the merits of the same legal interpretation, policy decisions, and analytical methodology that EPA applied in a consistent way, in a single agency action, to SIPs across the United States.  In doing so, courts may

well reach inconsistent outcomes on matters of interstate pollution where the imperative for consistent treatment of states is particularly compelling.  *See infra* Argument II.B. (explaining that the concurrent petitions for review of the Final Rule in other regional circuits raise a high risk of inconsistent outcomes).  This is precisely the result that Congress sought to avoid in enacting § 7607(b)(1).  *See NRDC v. EPA*, 512 F.2d 1351, 1357 (D.C. Cir. 1975) (explaining that by vesting the D.C. Circuit with exclusive review of nationally applicable actions, Congress sought "to ensure uniformity in decisions concerning issues of more than purely local or regional impact").

In sum, the Final Rule is nationally applicable and challenges to the rule may be filed only in the D.C. Circuit.

### B. EPA Properly Made and Published a Reasonable Finding that the Final Rule Is Based on a Determination of Nationwide Scope or Effect.

Even if this Court concludes that the Final Rule is locally or regionally applicable, Utah's petition for review must nonetheless be transferred or dismissed because EPA made and published an unambiguous finding that the Final Rule is based on a determination of "nationwide scope or effect" under § 7607(b)(1).  Final Rule, 88 Fed. Reg. at 9380-81.  EPA's decision to make and publish a finding that this action is based on a determination of nationwide scope or effect is well within its discretion as a policy choice and was reasonable.  *See ABF Freight*

14

*Sys. Inc. v. NLRB*, 510 U.S. 317, 324 (1993) ("When Congress expressly delegates to an administrative agency the authority to make specific policy determinations, courts must give the agency's decision controlling weight unless it is arbitrary, capricious, or manifestly contrary to the statute." (internal quotation marks and citation omitted)); *Texas v. EPA* (*2020 Texas*), 983 F.3d 826, 834 (5th Cir. 2020). As such, the substance of EPA's determination is entitled to significant deference.[8]

Here, EPA made and published such a finding with robust support. As part of its determination, EPA found that the Final Rule is based on a "common core of nationwide policy judgments and technical analysis concerning the interstate transport of pollutants throughout the continental U.S," which involved applying "the same, nationally consistent 4-step interstate transport framework for assessing obligations for the 2015 ozone NAAQS that it has applied in other nationally applicable rulemakings." Final Rule, 88 Fed. Reg. at 9380. When states, including Utah, argued for the use of alternative approaches or datasets, EPA evaluated them "with an eye to ensuring national consistency and avoiding inconsistent or

---

[8] EPA's determination is akin to other determinations that Congress leaves to an agency's broad discretion, such as the denial of a rulemaking petition, and merits considerable deference. *Cf., e.g.*, *WildEarth Guardians v. EPA*, 751 F.3d 649, 651 (D.C. Cir. 2014) (discussing *Massachusetts v. EPA*, 549 U.S. 497 (2007)).

inequitable results." [9] *Id.* at 9381.  Because EPA made a finding that the Final Rule is based on a determination of nationwide scope or effect under § 7607(b)(1) and published this finding in the Final Rule and the *Federal Register*, the proper venue for Utah's challenge is the D.C. Circuit.[10]

This outcome promotes the principles underlying § 7607(b)(1) and reflects Congress's goal of "centraliz[ing] review of national SIP issues in the D.C. Circuit" to ensure uniformity and avoid inconsistent results.  *See, e.g.*, *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *4 (5th Cir. Feb. 24, 2011) (concluding that "Congress intended the D.C. Circuit to review matters on which national uniformity is desirable" as a means to take advantage of the D.C. Circuit's "administrative law expertise" and facilitate "the orderly development of the basic

---

[9] The Final Rule is replete with examples where EPA's bases for disapproving the SIP submissions had nationwide scope or effect.  *See, e.g.*, Final Rule, 88 Fed. Reg. at 9372 (finding legally and technically inadequate the argument from Alabama, Arkansas, Kentucky, Michigan, Mississippi, Nevada, and Oklahoma that guidance for the Prevention of Significant Deterioration permitting program is applicable to the Good Neighbor Provision); *id*. at 9378 (finding legally inadequate the arguments related to international emissions and relative contribution from Arkansas, California, Illinois, Indiana, Kentucky, Michigan, Missouri, Ohio, Utah, and West Virginia); *id.* at 9354-60 (finding common analytic problems with the reliance on back trajectories to discount linkages by Alabama, Arkansas, California, Indiana, Kentucky, Louisiana, Texas, and West Virginia).

[10] EPA's decision to make and publish (or not) a finding that an action is based on a determination of nationwide scope or effect is committed to agency discretion and unreviewable.  *2020 Texas*, 983 F.3d at 934-35.  Therefore, any argument regarding EPA's prior decisions to make and publish such findings (or not) in other actions may not be evaluated.

law under the Act" and because "[c]entralized review of national issues is preferable to piecemeal review of national issues in the regional circuits, which risks potentially inconsistent results" (citations and internal quotation marks omitted)).  As detailed above, national uniformity is especially important here because of the interdependent nature of interstate pollution transport, the national interpretation of the Good Neighbor Provision, the common core of nationwide policy judgments and technical analyses that EPA applied in evaluating the submitted SIPs, and the high risk of inequitable results among upwind states and between upwind and downwind states should litigation proceed in multiple regional circuits.  Final Rule, 88 Fed. Reg. at 9380-81.

Indeed, the concurrent petitions for review of the Final Rule in separate actions in this Court as well as in the Fifth, Sixth, and Eighth Circuits illustrate the imminent risk of inconsistent results if these cases are not all transferred to the D.C. Circuit or dismissed.[11]  In the Final Rule, EPA disapproved SIPs based on a determination that has nationwide scope or effect.  *See, e.g.*, *supra* n.9.  Consequently, these petitions require multiple circuit courts to evaluate the same question—whether EPA acted unlawfully in resolving similar or even identical arguments raised by multiple states about how to address the problem of interstate

---

[11] *See supra* n.5.  As stated above, EPA moved or plans to move to transfer or dismiss these petitions as well.

17

pollution transport.  Indeed, Utah and the petitioners in the Fifth Circuit broadly make the same arguments in their respective motions to stay the Final Rule pending review in their regional circuit courts.  *Compare* Utah Stay Mot. at 12-21 (arguing that EPA exceeded its authority by rejecting Utah's methodology and that EPA arbitrarily and capriciously rejected Utah's "weight-of-evidence" approach for determining whether Utah was linked to downwind states) *with* Tex. Indus. Stay Mot. at 13-16 (arguing that EPA exceeded its authority by rejecting Texas's methodology and arbitrarily and capriciously rejected Texas's "weight-of-evidence" approach for determining whether Texas was linked to downwind states).  This high risk of inconsistent results on matters that pertain to interstate pollution problems implicating SIPs from 21 states and downwind pollution impacts that span coast to coast bolsters EPA's finding that the Final Rule is based on a determination of nationwide scope or effect.

Because EPA made and published a finding that the Final Rule is based on a determination of nationwide scope or effect, the Final Rule may be reviewed only by the D.C. Circuit.

## CONCLUSION

For the foregoing reasons, the petition for review of the Final Rule should be transferred to the D.C. Circuit or dismissed for improper venue.

Respectfully submitted,

TODD KIM
Assistant Attorney General

Of Counsel:                                  /s/ *Alexandra L. St. Romain*
                                             ALEXANDRA L. ST. ROMAIN
ROSEMARY HAMBRIGHT KABAN     U.S. Department of Justice
DANIEL P. SCHRAMM                    Environment and Natural Resources Division
U.S. Environmental Protection Agency  Environmental Defense Section
Office of General Counsel             P.O. Box 7611
Washington, DC                        Washington, D.C. 20044
                                      alexandra.st.romain@usdoj.gov

March 16, 2023

## CERTIFICATES OF COMPLIANCE

I hereby certify that this motion complies with the requirements of Fed. R. App. P. 27(d)(2)(A) because it contains 4,321 words according to the count of Microsoft Word, excluding the parts of the motion exempted by Fed. R. App. P. 32(f), and therefore is within the word limit of 5,200 words.

I further certify that this motion complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally-spaced font, and is double-spaced, except for headings, block quotes, and footnotes.


Dated:  March 16, 2023                    /s/ *Alexandra L. St. Romain*
                                          ALEXANDRA L. ST. ROMAIN

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing EPA's Motion to Transfer the

Petition for Review to the D.C. Circuit or Dismiss Based on Improper Venue on all

registered counsel through the Court's electronic filing system (CM/ECF).


Dated: March 16, 2023                    /s/ *Alexandra L. St. Romain*
                                         ALEXANDRA L. ST. ROMAIN