No. 23-9509

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

---

STATE OF UTAH, by and through its Governor, SPENCER J. COX, and its
Attorney General, SEAN D. REYES,

*Petitioner*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY
and MICHAEL S. REGAN, Administrator, U.S. EPA,

*Respondents*.

---

**MOTION FOR LEAVE TO INTERVENE BY
SIERRA CLUB AND CENTER FOR BIOLOGICAL DIVERSITY**

*/s/ Joshua D. Smith*
Joshua D. Smith
Rose Monahan
Sierra Club
2101 Webster Street, Suite 1300
Oakland, California 94612
415-977-5560
415-977-5704
joshua.smith@sierraclub.org
rose.monahan@sierraclub.org

Zachary M. Fabish
Sierra Club
50 F St NW, 8th Floor
Washington, DC 20001
650-388-8446
zachary.fabish@sierraclub.org

*Counsel for Sierra Club*

*s/ Kathleen L. Riley*
Kathleen L. Riley
Seth L. Johnson
Earthjustice
1001 G. St NW, Ste. 1000
Washington, DC 20001
202-754-5227
202-797-5245
kriley@earthjustice.org
sjohnson@earthjustice.org

*Counsel for Sierra Club and Center for
Biological Diversity*

Filed: March 15, 2023

## INTRODUCTION

Applicant-intervenors Sierra Club and Center for Biological Diversity hereby move for leave to intervene, pursuant to Fed. R. App. P. 15(d); Tenth Circuit Local Rule 15.4, as respondents in support of the U.S. Environmental Protection Agency's ("EPA's") action disapproving or partially disapproving 21 state plan submissions that failed to adequately address harmful, cross-state ozone pollution. Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9,336 (Feb. 13, 2023). EPA reserves its position on intervention until after this motion is filed. Utah intends to oppose this motion.

Applicant-intervenors are national non-profit environmental organizations and have an ongoing interest in EPA's administration of the Clean Air Act's framework to protect public health and welfare, including the health and welfare of their members, by reducing cross-state ozone pollution. Respondent EPA only took action to address cross-state ozone pollution, including the challenged disapproval action, after environmental groups including applicant-intervenors brought suit. *See* Complaint, *Downwinders at Risk, et al. v. Regan*, No. 4:21-cv-03551-DMR (N.D. Cal. May 12, 2021); *see also* Complaint, *State of New York, et al. v. Regan*, 1:21-ccv-00252-ALC (S.D.N.Y. Jan. 12, 2021).

Applicant-intervenors seek to intervene in this and other challenges to EPA's disapproval action to protect their interests, though venue properly lies solely in the D.C. Circuit. By filing for review in this Court,[1] as well as the Fifth Circuit Court of Appeals,[2] the Eighth Circuit Court of Appeals,[3] and the Sixth Circuit Court of Appeals,[4] states and utilities have ignored the Clean Air Act's judicial review provision that dictates that nationally applicable actions "may be filed only" in the United States Court of Appeals for the District of Columbia. 42 U.S.C. § 7607(b)(1); *see, e.g.*, *ATK Launch Systems, Inc. v. EPA*, 651 F.3d 1194, 1197 (10th Cir. 2011) (transferring petitions for review of EPA designations to the D.C. Circuit even though the petitions challenged the designations of only two counties); *S. Ill. Power Coop. v. EPA*, 863 F.3d 666 (7th Cir. 2017); *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *3 (5th Cir. Feb. 24, 2011) (unpublished) (transferring to the D.C. Circuit Texas's petition for review of EPA's call for thirteen states over seven federal circuits to revise their state plans). Similarly,

---

[1] Petition for Review, *State of Utah v. EPA*, No. 23-9509 (10th Cir. Feb. 13, 2023); Petition for Review, *PacifiCorp, et al. v EPA*, No. 23-9512 (10th Cir. Feb. 24, 2023); Petition for Review, *State of Oklahoma, et al. v. EPA*, No. 23-9514 (10th Cir. Mar. 2, 2023).

[2] Petitions for Review, *State of Texas, et al.; Luminant Generation Company, et al.; and Association of Electric Companies of Texas, et al. v. EPA*, No. 23-60069 (5th Cir. Feb. 14, 2023); Petition for Review, *Public Utility Commission of Texas and Railroad Commission of Texas v. EPA*, No. 23-60069 (5th Cir. Mar. 9, 2023).

[3] Petition for Review, *State of Arkansas, et al. v. EPA*, No. 23-1320 (8th Cir. Feb. 16, 2023.

[4] Petition for Review, *Commonwealth of Kentucky v. EPA*, No. 23-3216 (6th Cir. Mar. 13, 2023).

regionally applicable actions based on a published determination of nationwide scope and effect "may be filed only" in the Court of Appeals for the District of Columbia. 42 U.S.C. § 7607(b)(1). The disapproval action here is nationally applicable and, in the alternative, EPA has published its finding that the disapproval action is "based on a determination of 'nationwide scope or effect.'" 88 Fed. Reg. at 9,380; *see Alcoa, Inc. v. EPA*, No. 04-1189, 2004 WL 2713116, at * 1 (D.C. Cir. Nov. 24, 2004) (unpublished) (concluding that all petitions challenging certain ozone nonattainment classifications belonged in the D.C. Circuit where the Administrator "unambiguously determined" that the rule has "nationwide scope and effect"). Therefore, venue is improper in the Tenth Circuit. Should the court transfer this petition pursuant to section 7607(b)(1), applicant-intervenors respectfully request the Court transfer this motion without having ruled on it, such that this motion will be treated as seeking intervention in all challenges to the disapproval action before the D.C. Circuit.[5] *See* Order, *BCCA Appeal Group*

---

[5] *See* D.C. Cir. R. 15(b):

> For purposes of FRAP 15(d), a motion to intervene in a case before this court regarding review of agency action must be served on all parties to the case before the court. A motion to intervene in a case before this court concerning direct review of an agency action will be deemed a motion to intervene in all cases before this court involving the same agency action or order, including later filed cases, unless the moving party specifically states otherwise, and an order granting such motion has the effect of granting intervention in all such cases.

*v. EPA*, No. 15-60427, at 2 (5th Cir. Aug. 28, 2015) (granting motion to transfer "together with any pending motions") (unpublished) (attached to this motion).

## BACKGROUND

### I.    Ozone pollution harms human health and the environment.

Ground-level ozone pollution, the main component of smog, seriously harms public health and the environment. Ozone itself is a corrosive air pollutant that inflames the lungs, constricts breathing, and likely kills people.[6] Ozone causes and exacerbates asthma attacks, emergency room visits, hospitalizations, and other serious health harms.[7] Ozone-induced health problems can force people to change their ordinary activities, requiring children to stay indoors and forcing people to take medication and miss work or school.[8]

Ozone can harm healthy adults, but others are even more vulnerable.[9] Because their respiratory tracts are not fully developed, children are especially vulnerable to ozone pollution, particularly when they have elevated respiratory

---

[6] *See* National Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 65,292, 65,308/1-3 (Oct. 26, 2015); EPA, Integrated Science Assessment for Ozone and Related Photochemical Oxidants, at 2-20 to -24, tbl.2-1 (Feb. 2013) (EPA-HQ-OAR-2008-0699-0405) ("Science Assessment").

[7] *See, e.g.*, EPA, Policy Assessment for the Review of the Ozone National Ambient Air Quality Standards, at 3-18, 3-26 to -29, 3-32 to -35 (Aug. 2014) (EPA-HQ-OAR-2008-0699-0404) ("Policy Assessment"); Science Assessment at 2-16 to -18, 2-20 to -24, tbl.2-1.

[8] *See, e.g.*, Policy Assessment at 4-12.

[9] *See* 80 Fed. Reg. at 65,310/1-3.

rates, as when playing outdoors.[10] People with lung disease and the elderly also have heightened vulnerability.[11] And, people with asthma experience more severe impacts from ozone exposure than healthy individuals do and are more vulnerable at lower levels of exposure.[12] Because of these harms, the Clean Air Act requires EPA to establish and periodically review ambient air quality standards to protect public health and welfare from ozone's harmful effects. *See* 42 U.S.C. § 7409(b), (d)(1).

## II.    The Clean Air Act requires states and EPA to address broad, cross-state pollution.

Ozone forms from precursor pollution like nitrogen oxides that can travel great distances before it reacts with other pollutants to create smog. As EPA notes, "[t]his happens when pollutants emitted by cars, power plants, industrial boilers, refineries, chemical plants, and other sources chemically react in the presence of sunlight."[13] Ground-level ozone is not just a local or urban problem—it "can also be transported long distances by wind, so even rural areas can experience high ozone levels."[14]

---

[10] *See, e.g.*, Policy Assessment at 3-81 to -83.
[11] *See* 80 Fed. Reg. at 65,310/3.
[12] *Id.* at 65,311/1 n.37, 65,322/3.
[13] *See* EPA, "Ground-level Ozone Basics," https://www.epa.gov/ground-level-ozone-pollution/ground-level-ozone-basics#formation (last visited March 7, 2023).
[14] *Id.*

Because ozone precursor air pollution blows across state lines—sometimes hundreds of miles from where it is emitted to where it causes harm—ozone is a national problem that presents significant cross-state equity issues. Thus, the Clean Air Act includes a "Good Neighbor Provision" that requires states to submit to EPA plans to eliminate pollution from within their borders that significantly contributes to nonattainment of or interference with maintenance of the ozone standard in downwind states. 42 U.S.C. § 7410(a)(2)(D)(i)(I).

To ensure that downwind areas can timely meet and maintain the standards, the Act imposes a series of deadlines on both states and EPA. Chiefly relevant here, within three years after EPA adopts a standard, states must adopt and submit plans to EPA that implement their obligations under the Act, including those of the Good Neighbor Provision. 42 U.S.C. § 7410(a). EPA must approve or disapprove states' complete plans "[w]ithin 12 months," based on whether the plans satisfy the Act's requirements. 42 U.S.C. § 7410(k)(2), (3); *see also* 42 U.S.C. § 7410(a)(2)(D)(i)(I). If EPA disapproves a state's plan—or finds that a state failed to submit a plan at all, 42 U.S.C. § 7410(k)(1)(B)-(C), EPA must promulgate a federal plan "within 2 years," unless the state corrects its plan and the Administrator approves the corrected plan first. 42 U.S.C. § 7410(c)(1)(B).

### III.   States and EPA failed to timely and adequately address cross-state pollution under the 2015 ozone standard.

EPA failed to timely approve or disapprove 32 state plans under the 2015 ozone standard, and the applicant-intervenors and other environmental organizations filed a citizen suit to compel the agency to fulfill its statutory duty. *See* Complaint, *Downwinders at Risk, et al. v. Regan*, No. 4:21-cv-03551-DMR (N.D. Cal. May 12, 2021). As a result of a consent decree resolving that case, EPA was required to take final action approving or disapproving 20 of those state plans by January 31, 2023.[15] *See* Consent Decree and Notice of Stipulated Extension of Consent Decree Deadline, *Downwinders at Risk, et al. v. Regan*, 4:21-cv-03551-DMR (N.D. Cal. Jan. 12, 2022 and Dec. 8, 2022).

Separately, EPA found that four states, including Utah, missed their statutory deadline to submit plans to EPA.[16] Findings of Failure To Submit a Clean Air Act Section 110 State Implementation Plan for Interstate Transport for the

---

[15] EPA is subject to a December 15, 2023 deadline to finalize action on plan submissions from Arizona, Tennessee, and Wyoming. Notice of Second Stipulated Extension of Consent Decree Deadline, No. 4:21-cv-03551-DMR (N.D. Cal. Jan. 30, 2023). EPA has taken action on the remaining nine states originally at issue, including Connecticut, 86 Fed. Reg. 71,830 (Dec. 20, 2021); Florida, Georgia, North Carolina and South Carolina, 86 Fed. Reg. 68,413 (Dec. 2, 2021); Hawaii, 86 Fed. Reg. 73,129 (Dec. 27, 2021); Iowa, 87 Fed. Reg. 22,463 (Apr. 15, 2022); Kansas, 87 Fed. Reg. 19,390 (Apr. 4, 2022); Montana, 87 Fed. Reg. 21,578 (Apr. 12, 2022).

[16] EPA also found that Maine, Rhode Island, and South Dakota failed to submit adequate plans. 84 Fed. Reg. 66,614 (Dec. 5, 2019). However, EPA subsequently approved new plans from these states. 85 Fed. Reg. 67,653 (South Dakota); 86 Fed. Reg. 45,870 (Maine); 86 Fed. Reg. 70,409 (Rhode Island).

2015 Ozone National Ambient Air Quality Standards (NAAQS), 84 Fed. Reg. 66,612, 66,614 (Dec. 5, 2019). EPA only made this finding after applicant-intervenor Sierra Club filed suit.[17] That finding triggered EPA's separate obligation to promulgate federal plans to reduce these four states' cross-state pollution within two years, unless EPA approves a revised state plan submission first. *See* 84 Fed. Reg. at 66,614; 42 U.S.C. § 7410(c)(1)(a).

More than a year after the deadline to submit plans—and only after applicant-intervenor Sierra Club brought suit to compel EPA to address the states that failed to submit plans,[18] Utah submitted an incomplete plan on October 24, 2019 and a revised plan on January 29, 2020. *See* Proposed Air Plan Disapproval; Utah; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 87 Fed. Reg. 31,470, 31,475 (May 24, 2022). However, while pollution from Utah significantly contributes to ozone attainment problems outside of Utah—including in Colorado, according to EPA's technical nationwide ozone transport modeling—Utah "included no permanent and enforceable emissions controls" in its state plan submission. 88 Fed. Reg. at 9,360. Accordingly, EPA disapproved the Utah plan as part of a single national rulemaking that disapproved all state plan submissions, including Oklahoma's, Texas's, Arkansas's, and Kentucky's submissions, that "included no permanent

---

[17] Complaint, *Sierra Club v. Wheeler*, No. 1:19-cv-02923 (D.D.C. Sept. 30, 2019).
[18] *Id.*

and enforceable emissions controls" despite significantly contributing to ozone attainment problems in other states.[19]

On February 13, 2023, EPA published the action at issue that disapproved or partially disapproved 21 states' plan submissions, including Utah's late plan. 88 Fed. Reg. 9,336 (Feb. 13, 2023). As a result of EPA's disapproval action and EPA's finding of failures to submit, 84 Fed. Reg. at 66,614, EPA must promulgate federal plans to reduce these states' cross-state pollution, unless EPA approves a revised state plan submission first. *See* 42 U.S.C. § 7410(c)(1)(a).

## IV.    Applicant-intervenors have long engaged to drive effective reductions in cross-state.

Because of the threat posed by ozone pollution to public health, including the health of applicant-intervenors' members, and to the environment, applicant-intervenors have worked for years to advocate for stronger cross-state ozone protections. This work has included engagement in the administrative and judicial proceedings regarding EPA's prior attempts at establishing federal cross-state ozone plans:

---

[19] According to EPA's nationwide ozone transport modeling: Oklahoma and Arkansas significantly contribute to ozone attainment problems in Texas; Texas significantly contributes to ozone attainment problems in Illinois, New Mexico, and Wisconsin; and Kentucky significantly contributes to ozone attainment problems in Connecticut. *See* EPA's Modeling Data (Feb. 13, 2023) (EPA-HQ-OAR-2021-0663-0070).

*The Original Cross-State Air Pollution Rule.* Sierra Club participated as respondent-intervenor in the litigation over the original cross-state rule under the 2008 ozone standard. 76 Fed. Reg. 48,208 (Aug. 8, 2011). *See* Order, *EME Homer City Generation L.P. v. EPA*, No. 11-1302 (and consolidated cases) (D.C. Cir. Oct. 12, 2011); Brief for Public Health Respondent-Intervenors on Remand, *EME Homer City Generation, L.P. v. EPA*, No. 11-1302 (and consolidated cases) (D.C. Cir. Jan. 23, 2015).

*The Cross-State Air Pollution Rule Update.* Sierra Club challenged the "update" rule and was granted leave to intervene in defense of the rule, issued by EPA in 2016. 81 Fed. Reg. 74,504 (Oct. 26, 2016). *See* Order, *Wisconsin v. EPA*, No 16-1406 (and consolidated cases) (D.C. Cir. Jan. 31, 2017). Partially granting Sierra Club's petition, the D.C. Circuit remanded the "update" rule without vacating it. *Wisconsin v. EPA*, 938 F.3d 303 (D.C. Cir. 2019).

*The Cross-State Air Pollution Rule Close-Out.* Sierra Club challenged the next rule issued by EPA in 2018, which claimed to "close-out" EPA's obligations under the 2008 ozone standard. 83 Fed. Reg. 65,878 (Dec. 21, 2018); Brief of Citizen Petitioners, *New York v. EPA*, No. 19-1019 (and consolidated cases) (D.C. Cir. Apr. 19, 2019). The D.C. Circuit remanded and vacated the "close-out" rule. *New York v. EPA*, 781 F. App'x 4, 7 (D.C. Cir. 2019).

10

*The Revised Cross-State Air Pollution Rule Update.* Following the D.C.

Circuit's decisions in *Wisconsin* and *New York*, Sierra Club brought a deadline suit

to compel EPA to issue a new cross-state ozone plan. *See* Complaint,

*Downwinders at Risk, et al.*, No. 20-cv-00349 (D.D.C. Feb. 7, 2020). Sierra Club

was granted leave to intervene in litigation over the resulting rule. *See Midwest*

*Ozone Group v. EPA*, No. 21-1146, 2023 WL 2337782 (D.C. Cir. Mar. 3, 2023)

(denying petitioner's challenge to the rule).

*The Current Proposed Good Neighbor Rule.* Sierra Club and the Center for

Biological Diversity brought deadline suits to compel EPA to approve or

disapprove 32 state cross-state ozone plans, Complaint, *Downwinders at Risk, et*

*al. v. Regan*, No. 4:21-cv-03551-DMR (N.D. Cal. May 12, 2021), and to compel

EPA to take action to address cross-state ozone pollution from 4 states that failed

to submit plans, including Utah, Complaint, *Sierra Club, et al. v. Regan*, No. 3:22-

cv-01992-JD (N.D. Cal. Mar. 29, 2022).

Now, applicant-intervenors seek leave to intervene to defend the disapproval

action challenged here. *See* Fed. R. App. P. 15(d); Tenth Circuit Local Rule 15.4.

## ARGUMENT

To become a party, all an aspiring intervenor must do is timely file a motion

that states its interest in the case and explains why the existing parties may not

adequately represent that interest. Fed. R. App. P. 15(d); 10th Cir. R. 15.4(B)(1).

11

The Tenth Circuit follows a "somewhat liberal line in allowing intervention." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001) (citation omitted). A potential intervenor must claim an interest that "could be adversely affected by the litigation," but "practical judgment," and not a "rigid formula," must be applied. *San Juan County v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007) (en banc) (finding "indisputable that [conservation organization's] environmental concern is a legally protectable interest."). "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Id.* at 1195 (citation omitted). An aspiring intervenor must also show that, "as a practical matter," its ability to protect its interest may be impaired or impeded. *Coal. of Arizona/New Mexico Counties for Stable Econ. Growth v. Dep't of the Interior*, 100 F.3d 837, 844 (10th Cir. 1996). Both the "impairment" and "inadequate representation" elements "present[] a minimal burden." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199-1200 (10th Cir. 2010). As explained below, applicant-intervenors satisfy these requirements. Further, granting leave to intervene here is consistent with rulings of this Court and other circuits in similar cases where citizen groups intervened to defend EPA's Clean Air Act actions from state and industry challenges.[20]

---

[20] *See* Order, *EME Homer City Generation L.P. v. EPA*, No. 11-1302 (and

## I.   Applicant-intervenors file this motion within thirty days of the petition for review, as required under Rule 15(d).

This motion is filed within thirty days of Utah's petition for review, filed on February 13, 2023. The thirty-day period to move for leave to intervene accordingly expires on Wednesday, March 15, 2023. Fed. R. App. P. 15(d) (establishing a thirty-day time period for filing motions to intervene in challenges to agency actions). Therefore, this motion to intervene is timely filed.

## II.  Applicant-intervenors have significant interests in defending disapproval action that may be impaired without intervention.

Applicant-intervenors and their members have at least three direct, substantial, and legally protectable interests that may be impaired if the disapproval action is reversed or delayed.

First, applicant-intervenors and their members have an interest in the disapproval action that may be impaired without intervention because ozone

---

consolidated cases) (D.C. Cir. Oct. 12, 2011) (intervention granted in challenge to the Cross-State Air Pollution Rule); Order, *Wisconsin v. EPA*, No 16-1406 (and consolidated cases) (D.C. Cir. Jan. 31, 2017) (intervention granted in challenge to the Cross-State Air Pollution Rule Update); *Midwest Ozone Group v. EPA*, No. 21-1146, 2023 WL 2337782 (D.C. Cir. Mar. 3, 2023) (intervention granted in challenge to the Revised Cross-State Air Pollution Rule Update); *see also, e.g.*, *Oklahoma v. EPA*, 723 F.3d 1201 (10th Cir. 2013) (intervention granted in challenge to Oklahoma regional haze plan); *Texas v. EPA*, 690 F.3d 670 (5th Cir. 2012) (intervention granted in challenge to EPA disapproval of a state Clean Air Act plan); *Nebraska v. EPA*, No. 12-3084, 2016 WL 403655 (8th Cir. Feb. 3, 2016) (intervention granted in challenge to Nebraska regional haze plan); *NPCA v. EPA*, 788 F.3d 1134 (9th Cir. 2015) (intervention granted in challenge to Montana regional haze plan).

pollution, including ozone pollution that originates in Utah, harms their members' health, recreation, and aesthetic interests. Applicant-intervenors have thousands of members in Colorado and thousands more in Utah who are impacted by ozone-causing pollution from Utah. *See* Declaration of Huda Fashho ¶ 5; Declaration of Jonathan Levenshus ¶ 6. For example, Sierra Club member Ruth Hund is a resident of Golden, Colorado and suffers from asthma. Declaration of Ruth Hund ¶¶ 2, 8. Exposure to ozone pollution exacerbates her asthma and impacts her ability to train for triathlons. *Id.* ¶ 9. When ozone pollution is high, Ms. Hund will be forced to adjust her training plans in order to avoid being outside. *Id.* ¶ 12.

Sierra Club member Maurena Grossman is a resident of Salt Lake City, where she is regularly exposed to ozone pollution originating in Utah. Declaration of Maurena Grossman ¶ 2. Ms. Grossman describes air quality conditions making it "hard to breathe," *id.* ¶ 8, and she avoids spending time outside due to ozone pollution. *Id.* ¶ 10. She further describes her son's health challenges with asthma when he was younger, induced by the inversion exacerbated by man-made pollution, *id.* ¶ 9, and having mountain bike team practices regularly canceled due to harmful air quality. *Id.*

Sierra Club member Carly Ferro, also a resident of Salt Lake City, similarly describes the poor air quality in Salt Lake due to ozone. Declaration of Carly Ferro ¶¶ 2, 6. Ms. Ferro describes checking the local air quality every morning and

14

planning her days around the air quality forecast. *Id.* ¶ 7. When the air quality is bad, she will avoid spending time outside, including shortening or eliminating a daily dog walk, going for a walk with her toddler daughter, or exercising outside. *Id.* ¶ 7. She describes being unsure of whether she should continue to live in Salt Lake City due to "a toxic plume that is shortening [her] family's lifespan and worsening [their] quality of life" and that subjects her young daughter to asthma-inducing pollutants. *Id.* ¶¶ 9, 10.

Center for Biological Diversity member Scott Silber lives in Boulder, Colorado and suffers from asthma. Declaration of Scott Silber ¶¶ 1, 4. Scott checks ozone levels in his area several times a day, and he avoids the outdoor activities he enjoys—trail running, hiking, rock climbing, and playing ultimate frisbee—when ozone levels are high. *Id.* ¶¶ 3-4. Moreover, the inhalers and other medications Mr. Silber needs to control his symptoms triggered by high ozone pollution are expensive and can have unpleasant side effects, such as light-headedness, increased heart rate, and palpitations. *Id.* ¶¶ 5-7.

Center for Biological Diversity member Rich Reading lives in Denver, Colorado and suffers from asthma. Declaration of Richard Reading ¶¶ 2, 6. Like Mr. Silber, Mr. Reading follows the daily air report and limits the outdoor activities he enjoys, such as biking, running, gardening, and birdwatching when air quality is poor. *Id.* ¶¶ 6, 8. Mr. Reading also has to pay for medications and doctor

visits to control his asthma symptoms triggered by ozone pollution, and he invested in central air conditioning, a significant expense, at the recommendation of his doctor to filter the air coming into his home. *Id.* ¶ 7.

Without EPA's disapproval of do-nothing state plan submissions, applicant-intervenors' members may be deprived of the pollution reductions and the associated health and welfare benefits that the Act entitles them to, whether through an adequate revised state plan or a federal plan. Similarly, if Utah and the other states and utilities were to succeed in delaying or undoing EPA's disapproval action, the health and welfare benefits to applicant-intervenors' members of an adequate revised plan or a federal plan may be delayed, thereby harming their and applicant-intervenors' interests.

Second, as organizations dedicated to protecting public health and the environment, applicant-intervenors have an interest in ensuring that the Clean Air Act is properly implemented. *See* Declaration of Jonathan Levenshus ¶ 2. "[C]oncern for enforcing the statutory scheme" can provide grounds for intervention. *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1204 (5th Cir. 1992); *see Utah Ass'n of Counties*, 255 F.3d at 1252. Should the states and utilities succeed in this litigation, the applicant-intervenors' interest in the "even and consistent" interpretation and national application of the Clean Air Act's requirements as to cross-state ozone pollution would be impeded. *Halogenated Solvents Indus.*

*Alliance v. Thomas*, 783 F.2d 1262, 1265 (5th Cir. 1986) (quoting S. Rep. No.
1196, 91st Cong., 2d Sess. 41 (1970)); *Texas v. EPA*, No. 10-60961, 2011 WL
710598, at *3 (5th Cir. Feb. 24, 2011) (unpublished).

Third, applicant-intervenors also have a direct, substantial, and protectable
interest in defending the implementation of their consent decrees to compel EPA
action to address states' cross-state plan submissions. Consent Decree,
*Downwinders at Risk, et al. v. Regan*, 4:21-cv-03551-DMR (N.D. Cal. Jan. 12,
2022). An unfavorable outcome in this case would negate the substantial effort and
resources applicant-intervenors have devoted to compelling overdue federal action
to address cross-state ozone pollution from these and other states.

As courts have rightly recognized in granting citizen groups such as Sierra
Club leave to intervene in prior rounds of litigation on cross-state ozone regulation,
*see* Order, *EME Homer City Generation L.P. v. EPA*, No. 11-1302 (and
consolidated cases) (D.C. Cir. Oct. 12, 2011); Order, *Wisconsin v. EPA*, No 16-
1406 (and consolidated cases) (D.C. Cir. Jan. 31, 2017); Order, *Midwest Ozone
Group v. EPA*, No. 21-1146 (D.C. Cir. Aug. 13, 2021), applicant-intervenors have
strong interests in ensuring the challenged disapproval action is upheld, to protect
public health and welfare, including the health and welfare interests of their
members, and to protect the years of work they have invested in advocating and

17

litigating for strong action to reduce cross-state ozone pollution, that may be impaired without intervention.

### III. The environmental groups' interests may not be adequately represented by EPA, which has long resisted its obligations to address cross-state ozone pollution.

Applicant-intervenors' interests may not be adequately represented by EPA for at least three reasons. *See Wildearth Guardians*, 604 F.3d at 1200 ("The movant must show only the possibility that representation may be inadequate.").

First, applicant-intervenors' interests are not coextensive with EPA's obligation under the Clean Air Act to balance the broad (and often conflicting) interests of the public, the states, regulated entities and its own administrative efficiency. *See WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009) ("In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor" (quoting *Utah Ass'n of Counties*, 255 F.3d at 1256)). Whether in litigation or potential settlement discussions, EPA may balance those diverse public and private interests in a manner that places a lower priority on the environmental groups' goals, which are focused on protecting public health, welfare, and the environment from pollution. "Where a government agency may be placed in the position of defending both public and private interests," as here, "the burden of showing inadequacy of representation is

satisfied." *WildEarth Guardians*, 604 F.3d at 1200 (citing *Utahns for Better Transp. v. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002)).

Second, as a consequence of those differing interests, applicant-intervenors likely will make different arguments in defense of EPA's disapprovals than EPA will make. As one example, applicant-intervenors have pushed EPA to consider actual, monitored ozone levels in addressing cross-state pollution, particularly when EPA's modeling appears to underpredict ozone nonattainment problems.[21] Applicant-intervenors have historically disagreed with EPA on critical elements of its administration of the Clean Air Act's framework to reduce ozone pollution, including cross-state ozone pollution. *See Wisconsin v. EPA*, 938 F.3d 303 (D.C. Cir. 2019); *New York v. EPA*, 781 F. App'x 4 (D.C. Cir. 2019). As the D.C. Circuit observed, "doubtful friends may provide dubious representation." *Crossroads Grassroots Pol'y Strats. v. FEC*, 788 F.3d 312, 314 (D.C. Cir. 2015). Applicant-intervenors should not be required to rely on EPA alone to make arguments necessary to protect their members' health and welfare. *See Utah Ass'n of Ctys.*, 255 F.3d at 1256 (granting intervention and noting "it is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts" (citation omitted)); *see also U.S. Forest Serv.*, 573 F.3d at 997 (recognizing

---

[21] *See* Comments at 13-20 (Dec. 14, 2020) (EPA-HQ-OAR-2020-0272-0147) ("EPA's method for identifying receptor sites must take full account of actual monitoring data where it contradicts EPA's modeled and interpolated values."); Comments at 29-36 (June 21, 2022) (EPA-HQ-OAR-2021-0668-0758).

that coal mine should not be required to rely on government to protect its interests because government could shift policy to embrace environmental objectives).

Third, EPA may not adequately represent applicant-intervenors' interests because the agency began this rulemaking only after applicant-intervenors sued EPA for its failure to comply with its mandatory duties under the Clean Air Act. Complaint, *Downwinders at Risk, et al. v. Regan*, No. 4:21-cv-03551-DMR (N.D. Cal. May 12, 2021). Applicant-intervenors sued the agency precisely because EPA had failed to represent applicant-intervenors' statutory interests in securing timely and lawful action to address states' cross-state ozone pollution. Moreover, applicant-intervenors and EPA continue to be adversely situated, as even with the issuance of the final disapprovals at issue in this case, EPA has yet to fulfill its statutory and consent decree obligations to approve or disapprove all state plan submissions,[22] or to take action to address all states that failed to submit plans.[23] Given the history of adverse litigation between EPA and applicant-intervenors on cross-state ozone pollution, including the disapproval action challenged, here, EPA may not adequately represent applicant-intervenor' interests.

---

[22] EPA is subject to a December 15, 2023 deadline to finalize action on plan submissions from Arizona, Tennessee, and Wyoming. Notice of Second Stipulated Extension of Consent Decree Deadline, No. 4:21-cv-03551-DMR (N. D. Cal. Jan. 30, 2023).

[23] EPA is subject to a June 1, 2024 deadline to promulgate a federal plan, approve a state plan submission, or approve in part a state plan submission and promulgate a partial federal plan for New Mexico. Consent Decree, *Sierra Club, et al. v. Regan*, No. 3:22-cv-01992-JD (N.D. Cal. Jan. 24, 2023).

## CONCLUSION

For the foregoing reasons, applicant-intervenors Sierra Club and Center for

Biological Diversity respectfully request that the Court grant them leave to

intervene in Case No. 23-9509 to oppose the State of Utah's petition for review.

Respectfully submitted,

*/s/ Joshua D. Smith*
Joshua D. Smith
Rose Monahan (application pending)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, California 94612
415-977-5560
415-977-5704
joshua.smith@sierraclub.org
rose.monahan@sierraclub.org

Zachary M. Fabish (application pending)
Sierra Club
50 F St NW, 8th Floor
Washington, DC 20001
650-388-8446
zachary.fabish@sierraclub.org

*Counsel for Sierra Club*

*s/ Kathleen L. Riley*
Kathleen L. Riley (application pending)
Seth L. Johnson (application pending)
Earthjustice
1001 G. St NW, Ste. 1000
Washington, DC 20001
202-754-5227
202-797-5245
kriley@earthjustice.org
sjohnson@earthjustice.org

*Counsel for Sierra Club and Center for
Biological Diversity*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1, Sierra Club and Center for Biological Diversity certify that they have no parent companies and that no publicly held corporations own 10 percent or more of Sierra Club or Center for Biological Diversity.

DATED: March 15, 2023                   */s/ Kathleen L. Riley*
                                        Kathleen L. Riley


**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Counsel hereby certifies, in accordance with Federal Rules of Appellate Procedure 32(g)(1) and 27(d)(2)(A), that the foregoing **Motion to Intervene by Sierra Club and Center for Biological Diversity** contains **4012** words, as counted by counsel's word processing system, and thus complies with the 5,200 word limit.

Further, this document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) & (a)(6) because this document has been prepared in a proportionally spaced typeface using **Microsoft Word for Microsoft 365** using **size 14 Times New Roman** font.

DATED: March 15, 2023                   */s/ Kathleen L. Riley*
                                        Kathleen L. Riley