# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| STATE OF UTAH, by and through<br>its Governor, SPENCER J. COX,<br>and its Attorney General,<br>SEAN D. REYES,<br><br>Petitioner,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION<br>AGENCY and MICHAEL S. REGAN,<br>Administrator, U.S. EPA,<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 23-9509 |

---

## THE STATE OF UTAH'S RESPONSE TO RESPONDENT'S OPPOSED MOTION TO TRANSFER THE PETITION FOR REVIEW TO THE D.C. CIRCUIT OR DISMISS BASED ON IMPROPER VENUE

---

Emily C. Schilling
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
Ph. 801-799-5753
ecschilling@hollandhart.com

Kristina (Tina) R. Van Bockern
Aaron B. Tucker
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Ph. 303-295-8107
trvanbockern@hollandhart.com
abtucker@hollandhart.com

Sean D. Reyes
ATTORNEY GENERAL OF UTAH
Melissa A. Holyoak
SOLICITOR GENERAL
*Counsel of Record*
Office of the Attorney General
Utah State Capitol Complex
350 North State Street Suite 230
Salt Lake City, UT 84114-2320
Ph. 801-538-9600
melissaholyoak@agutah.gov

William L. Wehrum
WEHRUM ENVIRONMENTAL LAW LLC
1629 K Street, NW, Suite 300
Washington, D.C. 20006
Ph. 302-300-0388
William_Wehrum@comcast.net

*Attorneys for Petitioner State of Utah*

1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................... iii

GLOSSARY OF TERMS ......................................................................... vii

LIST OF ATTACHMENTS ..................................................................... viii

INTRODUCTION ..................................................................................... 1

BACKGROUND ........................................................................................ 3

I.    Statutory Framework ............................................................................ 3

     A.    Cooperative Federalism and the State's Role ........................ 3

     B.    Interstate Transport Provision and the Ozone NAAQS ........ 4

II.    Utah's Interstate Transport SIP ....................................................... 6

     A.    Utah's Interstate Transport SIP Submissions ...................... 6

     B.    EPA's Proposed SIP Disapproval ........................................... 8

     C.    EPA's Final Disapproval of Utah's SIP ................................ 8

     D.    Utah's Petition for Review ...................................................... 9

III.    Clean Air Act's Venue Provision ..................................................... 9

STANDARD OF REVIEW ...................................................................... 10

ARGUMENT ............................................................................................ 11

I.    The Disapproval of Utah's SIP is Not Facially a "Nationally Applicable" Final Agency Action ................................................... 11

     A.    Action on a SIP is Not Facially "Nationally Applicable." ..... 12

     B.    EPA's Assertion that this SIP Action is Nationally Applicable Runs Contrary to Prior Determinations. ........... 15

    C.    EPA's Primary Legal Authorities Do Not Support
        Transfer. .................................................................................... 18

II.    EPA's Finding of Nationwide Scope or Effect is Legally
    Infirm and Not Supported by the Facts ......................................... 22

    A.    The Core Determination of the Utah SIP Disapproval
        is Without Nationwide Scope or Effect. ............................... 24

    B.    EPA's Inconsistent Venue Determinations for
        Interstate Transport SIPs Undermine its Finding. ............. 25

CONCLUSION ......................................................................................... 26

CERTIFICATE OF COMPLIANCE ......................................................... 28

CERTIFICATE OF SERVICE .................................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Am. Rd. & Transp. Builders Ass'n v. EPA,*
705 F.3d 453 (D.C. Cir. 2013) ...................................................... passim

*Ariz. ex rel. Darwin v. EPA,*
815 F.3d 519 (9th Cir. 2016) .............................................................. 17

*ATK Launch Sys. v. EPA,*
651 F.3d 1194 (10th Cir. 2011) .................................................. passim

*Chevron U.S.A. Inc. v. EPA,*
45 F.4th 380 (D.C. Cir. 2022) ...................................................... 13, 14

*Hancock v. AT&T Co.,*
701 F.3d 1248 (10th Cir. 2012) ........................................................ 10

*Heckler v. Chaney,*
470 U.S. 821 (1985) ............................................................................ 23

*Nebraska v. EPA,*
812 F.3d 662 (8th Cir. 2016) .............................................................. 17

*North Dakota v. EPA,*
730 F.3d 750 (8th Cir. 2013) .............................................................. 17

*NRDC v. EPA,*
512 F.2d 1351 (D.C. Cir. 1975) .......................................................... 14

*NRDC v. Thomas,*
838 F.2d 1224 (D.C. Cir. 1988) .......................................................... 14

*Oklahoma v. EPA,*
723 F.3d 1201 (10th Cir. 2013) ...................................................... 4, 17

*S. Ill. Power Coop. v. EPA,*
863 F.3d 666 (7th Cir. 2017) ................................................... 18, 19, 20

*Sierra Club v. EPA,*
   926 F.3d 844 (D.C. Cir. 2019) ............................................................. 12

*Texas v. EPA,*
   829 F.3d 405 (5th Cir. 2016) ...................................................... passim

*Texas v. EPA,*
   983 F.3d 826 (5th Cir. 2020) ................................................ 10, 11, 23

*Texas v. EPA,*
   2011 U.S. App. LEXIS 5654 (5th Cir. Feb. 24, 2011) ......................... 21

*Union Elec. Co. v. EPA,*
   427 U.S. 246 (1976) .............................................................................. 4

*US Magnesium, LLC v. EPA,*
   690 F.3d 1157 (10th Cir. 2012) ............................................................ 3

*W. Va. Chamber of Comm. v. Browner*,
   1998 U.S. App. LEXIS 30621 (4th Cir. Dec. 1, 1998) .................. 18, 21

### STATUTES

42 U.S.C. § 7407(d)(1)(A) ...................................................................... 20

42 U.S.C. § 7407(d)(1)(B)(i) ................................................................... 20

42 U.S.C. §§ 7408–7409 ........................................................................... 3

42 U.S.C. § 7410(a)(1) ............................................................................... 3

42 U.S.C. § 7410(a)(2)(D)(i) ................................................................ 1, 4

42 U.S.C. § 7410(c)(1) ............................................................................... 4

42 U.S.C. § 7410(k)(3) ................................................................ 4, 20, 22

42 U.S.C. § 7410(k)(3), (4) ..................................................................... 21

42 U.S.C. § 7410(k)(5) ............................................................................ 21

42 U.S.C. § 7607(b)(1) ..................................................................... passim

# RULES

10th Cir. Rule 27.3(A)(3)(a) ...................................................................... 3

Fed. R. App. P. 25(c) ............................................................................... 28

Fed. R. App. P. 27(d)(1)–(2) ..................................................................... 28

Fed. R. App. P. 27(d)(1)(E) ...................................................................... 28

Fed. R. App. P. 32(f) ............................................................................... 28

Fed. R. Civ. P. 12(b)(3) ........................................................................... 11

# FEDERAL REGISTER

63 Fed. Reg. 57,356 (Oct. 27, 1998) .......................................................... 5

70 Fed. Reg. 25,162 (May 12, 2005) ........................................................... 5

76 Fed. Reg. 48,208 (Aug. 8, 2011) ............................................................ 5

76 Fed. Reg. 81,728 (Dec. 28, 2011) ......................................................... 17

77 Fed. Reg. 20,894 (April 6, 2012) ........................................................... 17

77 Fed. Reg. 40,150 (July 6, 2012) ............................................................ 17

77 Fed. Reg. 72,512 (Dec. 5, 2012) ........................................................... 17

77 Fed. Reg. 74,355 (Dec. 14, 2012) ......................................................... 17

80 Fed. Reg. 65,292 (Oct. 26, 2015) ........................................................... 5

81 Fed. Reg. 74,504, (Oct. 26, 2016) .......................................................... 6

83 Fed. Reg. 47,568 (Sept. 20, 2018) ........................................................ 16

84 Fed. Reg. 22,376 (May 17, 2019) .......................................................... 16

84 Fed. Reg. 66,612 (Dec. 5, 2019) ............................................................ 7

84 Fed. Reg. 69,331 (Dec. 18, 2019) ......................................................... 15

85 Fed. Reg. 5,572 (Jan. 31, 2020) ........................................................ 16

85 Fed. Reg. 20,165 (Oct. 11, 2020) ...................................................... 15

85 Fed. Reg. 21,325 (April 17, 2020) ..................................................... 16

85 Fed. Reg. 25,307 (May 1, 2020) ........................................................ 15

85 Fed. Reg. 34,357 (June 4, 2020) ....................................................... 16

85 Fed. Reg. 65,722 (Oct. 16, 2020) ...................................................... 16

85 Fed. Reg. 67,653 (Oct. 26, 2020) ...................................................... 16

86 Fed. Reg. 45,870 (Aug. 17, 2021) ...................................................... 16

86 Fed. Reg. 68,413 (Dec. 2, 2021) ........................................................ 15

86 Fed. Reg. 70,409 (Dec. 10, 2021) ...................................................... 16

86 Fed. Reg. 71,830 (Dec. 20, 2021) ...................................................... 15

86 Fed. Reg. 73,129 (Dec. 27, 2021) ...................................................... 15

87 Fed. Reg. 19,390 (April 4, 2022) ....................................................... 16

87 Fed. Reg. 20,036 (April 6, 2022) ......................................................... 8

87 Fed. Reg. 21,578 (April 12, 2022) ...................................................... 16

87 Fed. Reg. 22,463 (April 15, 2022) ...................................................... 15

87 Fed. Reg. 31,470 (May 24, 2022) .............................................. 8, 16, 25

88 Fed. Reg. 9,336 (Feb. 13, 2023) ............................................. 1, 2, 8, 24

## OTHER AUTHORITIES

Good Neighbor Plan for 2015 Ozone NAAQS, Rule History,
    https://www.epa.gov/csapr/good-neighbor-plan-2015-ozone-
    naaqs#history ........................................................................................ 8

# GLOSSARY OF TERMS

| | |
|---|---|
| Act or CAA | Clean Air Act |
| APA | Administrative Procedure Act |
| EGU | Electricity generating units |
| EPA | U.S. Environmental Protection Agency |
| Final Rule | *Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-hour Ozone National Ambient Air Quality Standards*, 88 Fed. Reg. 9,336 (February 13, 2023) |
| FIP | Federal Implementation Plan |
| NAAQS | National Ambient Air Quality Standards |
| Ozone Transport Provision | Section 110(a)(1) of the CAA; 42 U.S.C. § 7410(a)(1) |
| SIP | State Implementation Plan |
| UDAQ | Utah's Division of Air Quality |

## LIST OF ATTACHMENTS

**Number**                              **Title**

1          Information on the Interstate Transport State
           Implementation Plan Submissions for the 2015
           Ozone National Ambient Air Quality Standards
           under Clean Air Act Section 110(a)(2)(D)(i)(I),
           March 27, 2018

2          Analysis of Contribution Thresholds for Use in
           Clean Air Act Section 110(a)(2)(D)(i)(I) Interstate
           Transport State Implementation Plan Submissions
           for the 2015 Ozone National Ambient Air Quality
           Standards, August 31, 2018

3          Considerations for Identifying Maintenance
           Receptors for Use in Clean Air Act Section
           110(a)(2)(D)(i)(I) Interstate Transport State
           Implementation Plan Submissions for the 2015
           Ozone National Ambient Air Quality Standards,
           October 19, 2018

4          Utah's 2015 State Implementation Plan
           Infrastructure Elements for Ozone (January 24,
           2020)

5          EPA Letter re: Finding of Incompleteness for 2015
           Ozone Infrastructure SIP (Nov. 21, 2019)

6          Utah's Comments on the Proposed Rule, EPA-R08-
           OAR-2022-0315-0011

## INTRODUCTION

The State of Utah's petition for review challenges the Environmental Protection Agency's ("EPA") disapproval of Utah's State Implementation Plan ("SIP") developed to satisfy the Clean Air Act's ("CAA" or "Act") "Interstate Transport Provision," 42 U.S.C. § 7410(a)(2)(D)(i). 88 Fed. Reg. 9,336 (Feb. 13, 2023) ("Final Rule").[1] This Court has subject matter jurisdiction and venue is proper under 42 U.S.C. § 7607(b)(1) because EPA's disapproval of Utah's SIP is a locally or regionally applicable final agency action. The Court should therefore deny EPA's Motion to Transfer the Petition for Review to the D.C. Circuit or Dismiss Based on Improper Venue ("EPA Mot.").

The CAA specifies that the proper venue for a petition for review of EPA's SIP action is the "United States Court of Appeals for the appropriate circuit." 42 U.S.C. § 7607(b)(1). Accordingly, this Court has described EPA's approval or disapproval of a SIP as a "purely local action" and "an undisputably regional action." *See ATK Launch Sys. v.*

---

[1] The Final Rule addressed the separate SIP submittals of 21 states (19 disapprovals and 2 partial disapprovals). Utah's petition is limited to review of Utah's SIP disapproval.

*EPA*, 651 F.3d 1194, 1199 (10th Cir. 2011); *see also Am. Rd. & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 455 (D.C. Cir. 2013) (EPA SIP approvals or disapprovals are a "prototypical 'locally or regionally applicable' action.") (citations omitted).

EPA's packaging of 21 individual SIP disapprovals into a single notice does not transform those 21 factually intensive, state-specific analyses into a "nationally applicable" rule or a rule of "nationwide scope or effect." Nor does EPA's assertion that it "appl[ied] a uniform legal interpretation and common, nationwide analytical methods," 88 Fed. Reg. at 9,380, compel a finding that venue is appropriate in the D.C. Circuit. *See* EPA Mot. at 11. EPA's goals of consistency and application of common analytical methods are unremarkable, and do not overcome the statutory directive that such actions are appropriately reviewed in the regional circuit courts of appeals. Under EPA's approach, all challenges to SIP actions would be heard in the D.C. Circuit—an absurd result that would undermine the plain language of the CAA's venue provisions. *See* 42 U.S.C. § 7607(b)(1).

EPA made an individualized decision on Utah's proposed SIP based on facts and circumstances specific to Utah. This Court should deny

EPA's Motion because the disapproval of Utah's SIP is a quintessentially local or regional action and venue is proper in this Court under 42 U.S.C. § 7607(b)(1).[2] Denial is also warranted for the reasons described in PacifiCorp's and the Utah Municipal Power Agency's Response to EPA's Motion, filed in Docket Nos. 23-9512 and 23-9520, which Utah incorporates by reference.

## BACKGROUND

## I.    Statutory Framework

### A.    Cooperative Federalism and the State's Role

"The CAA uses a cooperative-federalism approach to regulate air quality." *US Magnesium, LLC v. EPA*, 690 F.3d 1157, 1159 (10th Cir. 2012). Congress directs EPA to establish nationally-applicable ambient air quality standards ("NAAQS") for pollutants such as ozone, *see* 42 U.S.C. §§ 7408–7409, but then shifts responsibility to the states to

---

[2] EPA's motion is also untimely. Under 10th Cir. Rule 27.3(A)(3)(a), a motion to dismiss "should be filed within 14 days after the notice of appeal is filed, unless good cause is shown." EPA waited over a month to file, with no explanation for its tardiness other than plans to file transfer motions in other pending actions. EPA Mot. at 2 n.1. But EPA must defend the opposition on multiple fronts because EPA *chose* to issue a single notice disapproving multiple SIPs. This is a problem of EPA's own making, not "good cause."

develop programs to regulate air quality to meet the NAAQS. 42 U.S.C. § 7410(a)(1).

A state has "'wide discretion in formulating its plan'" to achieve the NAAQS. *Texas v. EPA*, 829 F.3d 405, 411 (5th Cir. 2016) (citing *Union Elec. Co. v. EPA*, 427 U.S. 246, 250 (1976)). While EPA plays an important role in reviewing "SIPs to ensure that the plans comply with the statute," *Oklahoma v. EPA*, 723 F.3d 1201, 1204 (10th Cir. 2013), that role is limited. EPA "shall approve" the SIP if it "meets all the applicable requirements of th[e] Act," 42 U.S.C. § 7410(k)(3). If EPA determines that a state failed to submit an adequate SIP, the CAA requires EPA to promulgate a "Federal Implementation Plan," or "FIP," within two years of EPA's determination, "unless the State corrects the deficiency" before a FIP is issued. 42 U.S.C. § 7410(c)(1).

**B.    Interstate Transport Provision and the Ozone NAAQS**

CAA Section 110 directs states to include provisions in SIPs to mitigate in-state emissions that contribute significantly to air quality problems in downwind states. Section 110(a)(2)(D)(i) requires "adequate provisions" prohibiting "any source or other type of emissions activity within the State from emitting any air pollutant in amounts which will

… contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any" NAAQS. 42 U.S.C. § 7410(a)(2)(D)(i).

The CAA does not, however, define when upwind states "contribute significantly" to downwind nonattainment or "interfere with maintenance." Nor has EPA promulgated regulations that define these terms. Instead, EPA has developed a policy-based four-step analytical approach, or "framework," that it has applied in making its own significant contribution determinations in previous interstate transport rulemakings.[3]

In 2015, EPA lowered the ozone NAAQS to 70 parts per billion. 80 Fed. Reg. 65,292 (Oct. 26, 2015). Rather than promulgate a rule establishing parameters for ozone interstate transport SIPs, EPA issued a series of guidance memoranda[4] emphasizing that states need not follow

---

[3] *See* 63 Fed. Reg. 57,356 (Oct. 27, 1998); 70 Fed. Reg. 25,162 (May 12, 2005); 76 Fed. Reg. 48,208 (Aug. 8, 2011).

[4] Att. 1, "Information on the Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality Standards under Clean Air Act Section 110(a)(2)(D)(i)(I)," March 27, 2018; Att. 2, "Analysis of Contribution Thresholds for Use in Clean Air Act Section 110(a)(2)(D)(i)(I) Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality

any single nationally applicable method in addressing interstate transport under the new ozone standard. EPA acknowledged that "its analytical approaches have varied over time" and stated that "states have flexibility to follow the familiar four-step transport framework … or alternative frameworks." Att. 1 at 3.

## II.    Utah's Interstate Transport SIP

### A.    Utah's Interstate Transport SIP Submissions

Prior to the 2015 ozone NAAQS, EPA excluded western states (including Utah) from interstate transport requirements for ozone-causing emissions—ozone transport was seen as a uniquely eastern issue.[5] *See* 81 Fed. Reg. 74,504, 74,523 (Oct. 26, 2016). In 2016, EPA indicated that it would begin working with western states to assess whether in-state emissions significantly contribute to downwind air quality concerns. *See* 81 Fed. Reg. at 74,523.

_____

Standards," August 31, 2018; Att. 3, Considerations for Identifying Maintenance Receptors for Use in Clean Air Act Section 110(a)(2)(D)(i)(I) Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality Standards, October 19, 2018.
[5] Ground-level ozone—i.e., "smog"—is not directly emitted by sources but is formed in the atmosphere through photochemical reactions. EPA and the states therefore regulate direct emissions of the "precursors" of ozone, which primarily are nitrogen oxides and volatile organic compounds.

Following publication of the 2015 ozone NAAQS, the Utah Division of Air Quality ("UDAQ"), in collaboration with EPA Region 8, developed Utah's Interstate Transport SIP. Utah's SIP relied on an analytical approach set forth in EPA's guidance memoranda, as well as methods previously approved by EPA in other SIPs. Att. 4, Utah Proposed SIP, at 15 & n.6 (Jan. 24, 2020). Utah concluded that contributions to downwind air quality were not significant when considering all relevant data, including the total emission contributions from all upwind states, the significant contributions from within the state of Colorado and regionally specific ozone issues in the western United States (such as elevated natural background ozone levels, increased instances of wildfire, significant biogenic contributions, and the influence of internationally transported pollutants). *Id.* at 22.

Utah submitted its SIP on October 24, 2019. Att. 5, EPA Letter re: Finding of Incompleteness for 2015 Ozone Infrastructure SIP (Nov. 21, 2019). EPA made an incompleteness determination alleging that Utah had not provided adequate public notice. *Id.*; *see also* 84 Fed. Reg. 66,612, 66,614 (Dec. 5, 2019). In January 2020, Utah submitted a revised SIP after providing additional public participation opportunities. Att. 4.

**B.    EPA's Proposed SIP Disapproval**

After an unexplained two-year delay, EPA proposed to disapprove Utah's SIP.[6] 87 Fed. Reg. 31,470 (May 24, 2022). EPA used its policy-based, four-step "framework" in assessing the adequacy of Utah's proposed SIP. *Id.* at 31,478–83. Utah, through UDAQ, filed comments objecting to EPA's proposed disapproval. *See* Att. 6, Comments.

**C.    EPA's Final Disapproval of Utah's SIP**

EPA finalized its disapproval of Utah's SIP on February 13, 2023, which it packaged with final disapprovals of 20 other state SIPs. 88 Fed. Reg. 9,336. EPA asserted that petitions for judicial review must be filed in the D.C. Circuit under CAA Section 307(b)(1) because the rule was "nationally applicable," and, in the alternative, it had made a finding of "nationwide scope or effect." 88 Fed. Reg. at 9,380–81.

---

[6] Prior to issuing the proposed disapproval, EPA proposed a FIP, which for the first time subjected Utah to an onerous federal emissions control program. 87 Fed. Reg. 20,036 (April 6, 2022). On March 15, 2023, Administrator Regan signed the FIP, which will be published shortly. *See* https://www.epa.gov/csapr/good-neighbor-plan-2015-ozone-naaqs#history.

### D.    Utah's Petition for Review

On February 13, 2023, Utah filed its Petition for Review in the Tenth Circuit. In its Petition, Utah specified that it was challenging only the disapproval of Utah's SIP and asserted venue is appropriate under 42 U.S.C. § 7607(b)(1).

## III.    Clean Air Act's Venue Provision

Under the CAA, venue for judicial review of EPA's final actions is governed by Section 307(b)(1). 42 U.S.C. § 7607(b)(1). "Section 7607(b)(1) categorizes petitions for review according to the nature of the action that the petition challenges." *Texas*, 829 F.3d at 419. A petition for review of a "nationally applicable" final agency action "may be filed only in the United States Court of Appeals for the District of Columbia." 42 U.S.C. § 7607(b)(1). On the other hand, "a petition for review of the Administrator's *action in approving or promulgating any implementation plan*" or other final agency action that is "locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit." *Id.* (emphasis added).

Although the "default presumption is that petitions for review of locally or regionally applicable actions" be filed in regional circuit courts of appeals, CAA Section 307(b)(1) provides for an alternate venue when

the final action is "based on a determination of nationwide scope or effect" that is formally published by EPA. *Texas*, 829 F.3d at 419–20, *citing* 42 U.S.C. § 7607(b)(1). Under this provision, the petition for review must be filed in the D.C. Circuit. 42 U.S.C. § 7607(b)(1).

## STANDARD OF REVIEW

Under the CAA's venue provision, "[t]he court—not EPA—determines both the scope of an action's applicability and whether it was based on a determination of nationwide scope or effect." *Texas v. EPA*, 983 F.3d 826, 833 (5th Cir. 2020). EPA's published "finding is an independent, post hoc, conclusion by the agency about the nature of the determinations; the finding is not, itself, the determination." *Texas*, 829 F.3d at 419. Therefore, courts must make "an independent assessment of the scope of the determination." *Id.* at 421 (applying a *de novo* standard of review to conclude that EPA's SIP disapproval did not have "nationwide scope or effect.").

Courts reviewing motions to dismiss or transfer for improper venue draw reasonable inferences and resolve factual conflicts in favor of the non-moving party. *See, e.g.*, *Hancock v. AT&T Co.*, 701 F.3d 1248, 1260–61 (10th Cir. 2012) ("the court must draw all reasonable inferences and

resolve all factual conflicts in favor of the plaintiff" when reviewing FRCP 12(b)(3) motions to dismiss for improper venue).

## ARGUMENT

EPA's motion to transfer venue should be denied because venue properly lies in the Tenth Circuit. First, EPA's disapproval of Utah's SIP is not, as EPA asserts, "plainly nationally applicable," EPA Mot. at 2; instead, it is "the prototypical 'locally or regionally applicable' action." *Am. Rd. & Transp. Builders Ass'n*, 705 F.3d at 455. Indeed, CAA Section 307(b) unambiguously states that review of EPA's action on a proposed SIP is appropriately reviewed by the regional circuit courts of appeals. Second, EPA's published finding of nationwide scope or effect is legally infirm and unsupported by the facts and EPA precedent. *See Texas*, 983 F.3d at 833.

## I.   The Disapproval of Utah's SIP is Not Facially a "Nationally Applicable" Final Agency Action.

CAA Section 307(b)(1) states affirmatively that while "nationally applicable" regulations or actions belong in the D.C. Circuit, the review of final action on "any implementation plan" under Section 110 defaults to the regional circuit courts of appeals. 42 U.S.C. § 7607(b)(1). Accordingly, courts have properly held that an EPA final rule approving

or disapproving a SIP is a "prototypical 'locally or regionally applicable' action" under Section 307(b)(1). *Am. Rd. & Transp. Builders Ass'n*, 705 F.3d at 455. Thus, EPA's disapproval of Utah's proposed SIP is not, as EPA argues, facially a "nationally applicable" regulation or action for which venue lies in the D.C. Circuit. EPA Mot. at 11.

### A. Action on a SIP is Not Facially "Nationally Applicable."

EPA makes the sweeping assertion that "[b]ecause the Final Rule applies a uniform methodology and legal interpretation to SIP submissions across a vast geographic area, the rule is nationally applicable." EPA Mot. at 12. But CAA Section 307(b)(1) "makes clear that this court must analyze whether the regulation [being challenged] itself is nationally applicable, not whether the effects complained of or the petitioner's challenge to that regulation is nationally applicable." *ATK Launch Sys.*, 651 F.3d at 1197; *see also Sierra Club v. EPA*, 926 F.3d 844, 849 (D.C. Cir. 2019) ("The court need look only to the face of the agency action, not its practical effects, to determine whether an action is nationally applicable."); *Texas*, 829 F.3d at 419 ("The question of applicability turns on the legal impact of the action as a whole.").

Here, the disapproval of Utah's SIP is not, on its face, nationally applicable. It is a "purely" local or regional action specific to Utah that assesses the impacts of sources within Utah on Colorado receptors. *See ATK Launch Systems, Inc.*, 651 F.3d at 1199 (a SIP is characterized as a "purely local action" which is "undisputably regional"). The D.C. Circuit recently confirmed this important distinction in the CAA venue provision:

> The quintessential example of a "nationally applicable" EPA action that may be challenged only in [the D.C. Circuit] is a regulation that uniformly applies nationwide … At the other end of the spectrum, approving or promulgating a *State Implementation Plan "is the prototypical 'locally or regionally applicable' action that may be challenged only in the appropriate regional court of appeals*."

*Chevron U.S.A. Inc. v. EPA*, 45 F.4th 380, 386 (D.C. Cir. 2022) (emphasis added) (quoting *Am. Rd. & Transp. Builders Ass'n*, 705 F.3d at 455). EPA cannot change the "prototypical" nature of a SIP action by artificially packaging it together with 20 other SIP disapprovals.

Nor is EPA's disapproval of 21 SIPs a "nationally applicable" action because EPA purportedly applied a "uniform legal interpretation and common, nationwide analytical methods." EPA Mot. at 12. EPA's uniform interpretation of the Interstate Transport Provision, *id*. at 13–14, is not

adequate for establishing national applicability under the CAA venue provisions. As the D.C. Circuit has opined, "many locally or regionally applicable actions may require interpretation of the Clean Air Act's statutory terms, and that kind of interpretive exercise alone does not transform a locally applicable action into a nationally applicable one." *Chevron U.S.A. Inc.,* 45 F.4th at 387. It is not enough that "a challenged action 'applies a broad regulation to a specific context' and 'may set a precedent for future … proceedings.'" *Id.* (quoting *Am. Rd. & Transp. Builders Ass'n*, 705 F.3d at 456).[7]

Without question, EPA engaged in "a number of intensely factual determinations" unique to each of the 21 states involved. *See Texas*, 829 F.3d at 421. Using a consistent analytical approach cannot transform a local and regional action to a nationally applicable action where, as here,

---

[7] The D.C. Circuit's decision in *Chevron U.S.A. Inc.,* 45 F.4th at 387, undermines EPA's reliance on *NRDC v. Thomas*, 838 F.2d 1224, 1249 (D.C. Cir. 1988) and *NRDC v. EPA*, 512 F.2d 1351, 1357 (D.C. Cir. 1975) for the proposition that potentially inconsistent outcomes and complicated jurisdictional tests weigh against a finding of regional or local applicability. EPA Mot. at 13–14. Moreover, each of these cases are inapposite as they involved facially nationally applicable rulemaking actions, not SIP disapprovals.

the action under review concerns disapproval of a SIP based on state-specific analysis of emissions contributions to a single neighboring state.

## B. EPA's Assertion that this SIP Action is Nationally Applicable Runs Contrary to Prior Determinations.

EPA routinely designates similar SIP actions as locally and regionally applicable, undercutting EPA's claim of national applicability here. Indeed, EPA's own prior practice makes it clear that this SIP action cannot "facially" be nationally applicable.

First, EPA's Federal Register notice involves *disapprovals* of proposed interstate transport SIPs. EPA argues that this SIP action should be nationally applicable to avoid complicated venue analyses and "difficult line-drawing problems," EPA Mot. at 13. But EPA took the opposite position for 23 state SIPs that EPA *approved* to address interstate transport for the 2015 ozone standard and instructed parties that "petitions for judicial review … must be filed in the United States Court of Appeals for the appropriate circuit."[8] EPA did not state that any

_____

[8] *See* 84 Fed. Reg. 69,331 (Dec. 18, 2019) (Alaska); 85 Fed. Reg. 20,165 (Oct. 11, 2020) (Colorado and North Dakota); 86 Fed. Reg. 71,830 (Dec. 20, 2021) (Connecticut); 85 Fed. Reg. 25,307 (May 1, 2020) (Delaware); 86 Fed. Reg. 68,413 (Dec. 2, 2021) (Florida, Georgia, North Carolina, and South Carolina); 86 Fed. Reg. 73,129 (Dec. 27, 2021) (Hawaii); 87 Fed.

of these SIP approvals were nationally applicable—or based on a determination of nationwide scope or effect—even though EPA applied the same analytical approach. *Id.* It simply is not plausible that *approvals* are locally and regionally applicable, while *disapprovals* are nationally applicable.

Second, when EPA proposed disapproval of Utah's SIP, it did so in a proposed rule that covered only Utah and was signed by the Regional Administrator. 87 Fed. Reg. at 31,484. EPA also created a region-specific docket for the rulemaking. 87 Fed. Reg. at 31,470 (Docket No. EPA–R08–OAR–2022–0315). Although EPA also cited a national docket at the time of proposal, it explained that it existed only as a repository for common data. *Id.* Thus, in form and in function, the Utah proposed SIP disapproval and the proposed disapprovals for other states constituted

_____

Reg. 22,463 (April 15, 2022) (Iowa); 85 Fed. Reg. 65,722 (Oct. 16, 2020) (Idaho); 87 Fed. Reg. 19,390 (April 4, 2022) (Kansas); 86 Fed. Reg. 45,870 (Aug. 17, 2021) (Maine, New Hampshire); 85 Fed. Reg. 5,572 (Jan. 31, 2020) (Massachusetts); 87 Fed. Reg. 21,578 (April 12, 2022) (Montana); 85 Fed. Reg. 21,325 (April 17, 2020) (Nebraska); 84 Fed. Reg. 22,376 (May 17, 2019) (Oregon); 86 Fed. Reg. 70,409 (Dec. 10, 2021) (Rhode Island); 85 Fed. Reg. 67,653 (Oct. 26, 2020) (South Dakota); 85 Fed. Reg. 34,357 (June 4, 2020) (Vermont); 83 Fed. Reg. 47,568 (Sept. 20, 2018) (Washington).

separate actions of only local or regional significance. Packaging the disapprovals into a single notice does not change the fundamental nature of the underlying actions, which at their core are case-by-case determinations based on the unique facts and circumstances presented by each state. *See Texas,* 829 F.3d at 423 (noting "SIP approvals or disapprovals are highly fact-dependent actions.").

Finally, EPA's assertions here contradict EPA's approach in other regional SIP actions. Under the regional haze program, for example, EPA based SIP disapprovals on failure to adhere to nationally consistent standards—the statutory and regulatory requirements for best available retrofit technology ("BART") determinations—but did not uniformly assert that its actions were nationally applicable.[9] These actions were litigated in the circuit courts of appeals.[10] EPA's review of SIPs under the

---

[9] *See, e.g.*, 76 Fed. Reg. 81,728 (Dec. 28, 2011) (Oklahoma); 77 Fed. Reg. 20,894 (April 6, 2012) (North Dakota); 77 Fed. Reg. 40,150 (July 6, 2012) (Nebraska); 77 Fed. Reg. 72,512 (Dec. 5, 2012) (Arizona); 77 Fed. Reg. 74,355 (Dec. 14, 2012) (Utah).

[10] *Supra* note 8; *see also Oklahoma*, 723 F.3d at 1206; *North Dakota v. EPA*, 730 F.3d 750, 758 (8th Cir. 2013); *Nebraska v. EPA*, 812 F.3d 662, 666 (8th Cir. 2016); *Ariz. ex rel. Darwin v. EPA*, 815 F.3d 519, 524 (9th Cir. 2016).

regional haze program does not differ substantially from EPA's approach to its review of SIPs for interstate transport. EPA's previous actions belie its assertion that venue for SIP disapprovals in this action belong in the D.C. Circuit.

### C. EPA's Primary Legal Authorities Do Not Support Transfer.

EPA relies primarily on three circuit court decisions to argue that, because EPA has applied a "uniform and nationally consistent approach" to disapproving multiple states' SIPs, the Final Rule is facially nationally applicable. *See* EPA Mot. at 11 (citing *ATK Launch Sys.*, 651 F.3d at 1200); *S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 671 (7th Cir. 2017); *W. Va. Chamber of Comm. v. Browner*, 1998 U.S. App. LEXIS 30621 (4th Cir. Dec. 1, 1998)). But none of these cases establish a bright line rule tied to so-called nationwide approaches and, importantly, none involve SIP decisions.

On the contrary, a panel of this Court in *ATK Launch Systems* reviewed EPA's decision to designate areas within multiple states as in "attainment" or "nonattainment" for certain air quality standards. *ATK Launch Sys.*, 651 F.3d at 1197. In evaluating whether the Tenth Circuit was the appropriate venue, the Court considered much more than

whether EPA applied a uniform standard. The Court, instead, considered "the nature of the regulation," detailing the *types* of EPA actions that are properly considered in local circuits and those that are properly considered in the D.C. Circuit. *Id.* at 1197–1200. A "purely local action such as a SIP (an undisputably regional action)" and "a rule that applied to a single EPA region" are EPA actions that are local or regional and belong in the local circuit. *See id.* at 1198–99 (discussing cases). On the other hand, actions like air quality designations and actions akin to a "SIP Call" (i.e., a rule requesting revisions to all SIPs not meeting newly established standards) belong in the D.C. Circuit. *Id.* at 1199–1200 (discussing cases); *see also S. Ill. Power Coop.*, 863 F.3d at 674 (applying a "mode of analysis [that] keeps the focus on the nature of the agency's action" and determining that EPA's attainment designations for multiple states must be reviewed in the D.C. Circuit).

The *type* of EPA action being challenged is material to the venue question because, under the CAA, states' and EPA's roles differ significantly under certain regulatory regimes—affecting whether an action can and should be viewed as local, regional, or national. For example, the attainment designations at issue in *ATK Launch Systems*

and *Southern Illinois Power Cooperative* are materially different than EPA's SIP disapprovals here. *See ATK Launch Sys.*, 651 F.3d at 1195–96; *S. Ill. Power Coop.*, 863 F.3d at 674. The difference arises because the CAA assigns to EPA the authority and responsibility to make nationally consistent air quality designations. *See* 42 U.S.C. § 7407(d)(1)(B)(i). The role of states, on the other hand, is limited to submitting recommendations to EPA. 42 U.S.C. § 7407(d)(1)(A).

Here, the roles are effectively reversed. States have primary responsibility for developing interstate transport SIPs based on local conditions and policies that apply within each state. EPA's role is limited to deciding whether the states' individual SIPs satisfy all CAA requirements. *See* 42 U.S.C. § 7410(k)(3). If they do, EPA "shall" approve the SIPs. *Id.* But neither the CAA nor EPA regulations require a particular approach to implementing the Interstate Transport Provision. Thus, states may use any approach they determine to be appropriate for their unique circumstances, provided it meets CAA requirements. EPA's role here does not extend, as in *ATK* or *Southern Illinois Power Cooperative*, to making the appropriate regulatory determination in the first instance.

Similarly, as observed in *ATK Launch Systems,* "SIP calls" are also different, and that is why they were transferred by the Fourth and Fifth Circuit to the D.C. Circuit. *See Texas v. EPA*, 2011 U.S. App. LEXIS 5654, at *17 (5th Cir. Feb. 24, 2011); *W. Va. Chamber of Commerce v. Browner*, No. 98-1013, 1998 U.S. App. LEXIS 30621, at *20–25 (4th Cir. Dec. 1, 1998). "A SIP Call is an EPA rule calling for revision to any SIP not meeting a newly-established standard." *ATK Launch Sys.*, 651 F.3d at 1199 (citing *Texas,* 2011 U.S. App. LEXIS 5654); *see* 42 U.S.C. § 7410(k)(5) (call for plan revisions). Under a SIP Call, EPA applies a uniform standard to existing SIPs and is empowered to require revisions of those SIPs that are determined to be "substantially inadequate." *See* 42 U.S.C. § 7410(k)(5). As noted by the Fifth Circuit, the CAA "provides separately for EPA actions *approving* a SIP and an EPA action *calling for revisions* of an existing SIP." *Texas*, 2011 U.S. App. LEXIS 5654, at *13 (emphasis in original) (comparing 42 U.S.C. § 7410(k)(3), (4) with 42 U.S.C. § 7410(k)(5)).

Unlike a SIP Call, EPA's role in reviewing a SIP submittal is limited and must account for a state's wide discretion in developing a SIP, such that the EPA "shall approve" a proposed SIP that "meets all of the

applicable requirements of [the CAA]." 42 U.S.C. § 7410(k)(3). For this reason, courts have distinguished SIP Calls from SIP disapprovals of multiple states. *See Texas*, 829 F.3d at 423–24 (petition for review of EPA's disapproval of regional haze SIPs covering two circuits).

Because the *nature* and *type* of the EPA action under review are the determining factors in the Court's venue determination, EPA's reliance on its uniform analytical approach is unavailing. Here, Utah seeks review of EPA's decision on its locally applicable SIP that analyzes emissions from in-state facilities and their impact on the receptors in Colorado, which also is in the Tenth Circuit. As the Court observed in *ATK Launch Systems*, the "purely local action such as a SIP (an undisputably regional action)" is the type of action that is properly reviewed by the local circuit. *See* 651 F.3d at 1199.

## II.   EPA's Finding of Nationwide Scope or Effect is Legally Infirm and Not Supported by the Facts.

EPA argues that "[e]ven if this Court concludes that the Final Rule is locally or regionally applicable, Utah's petition for review must nonetheless be transferred or dismissed because EPA made and published an unambiguous finding that the Final Rule is based on a

determination of 'nationwide scope or effect' under § 7607(b)(1)." EPA Mot. at 14. EPA is wrong.

To begin, EPA's assertion that its finding of nationwide scope or effect is committed to agency discretion and therefore unreviewable runs contrary to the limitations established by the Supreme Court in *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (agency's decision unreviewable only where the statute precludes judicial review or "a court would have no meaningful standard against which to judge the agency's exercise of discretion."); *see also Texas*, 829 F.3d at 421 n.19 ("Although the Administrator may have discretion over the decision to publish a finding, the statutory text does not give it exclusive discretion to assess the scope or effect of the determinations").

Further, EPA's finding is not conclusive, is not entitled to deference, and courts will independently assess the scope or effect of the determination. *Texas*, 829 F.3d at 420–21 (*de novo* review); *see Texas*, 983 F.3d at 833. Here, an independent inquiry demonstrates that EPA's disapproval of Utah's SIP is without nationwide scope or effect.

### A.    The Core Determination of the Utah SIP Disapproval is Without Nationwide Scope or Effect.

Courts must look at the determinations that "lie at the core of the agency action" to decide whether they have a nationwide scope or effect. *Texas*, 829 F.3d at 419. The determinations at the "core" of Utah's SIP disapproval are without nationwide scope or effect.

EPA's venue argument relies on its interpretation of "section 110(a)(2)(D)(i)(I) of the CAA for the 2015 ozone NAAQS based on a common core of nationwide policy judgments and technical analysis concerning the interstate transport of pollutants throughout the continental U.S." *See* 88 Fed. Reg. at 9,380. Specifically, EPA relies on its application of a "nationally consistent 4-step interstate transport framework," results of "nationwide photochemical grid modeling," and "a nationally uniform approach to the identification of nonattainment and maintenance receptors across the entire geographic area covered by this final action." *Id.* at 9,380–81.

Yet these considerations are not "the core of the agency action." *Texas*, 829 F.3d at 419. Instead, they describe EPA's policy preference for a single nationwide approach to interstate transport and not the 21 individualized determinations EPA was required to make based on 21

24

separate proposed SIPs, each of which was grounded in state-specific facts and circumstances. EPA's employment of a uniform approach to each of the SIPs does not make the disapproval of any of the 21 proposed SIPs an action of nationwide scope or effect. Indeed, EPA could have just as easily (and correctly) separated each of the 21 SIP disapprovals into individual notices while utilizing a uniform interpretation.

For purposes of EPA's action on Utah's proposed SIP—the only action that Utah challenges here—the core determination was that "Utah contributes to nonattainment and interferes with maintenance of the 2015 ozone NAAQS in the Denver, Colorado area." 87 Fed. Reg. at 31,480. This could not be a more local or regional determination.

### B. EPA's Inconsistent Venue Determinations for Interstate Transport SIPs Undermine its Finding.

In any event, the Court should not rely on EPA's finding of nationwide scope or effect given its inconsistent treatment of the 23 interstate transport SIP approvals. As discussed above, when EPA issued 23 interstate transport SIP *approvals*, it concluded those actions were of local and regional significance and that judicial review should occur in the local circuits. Yet for the *disapprovals*, EPA takes the opposite

position, claiming that 21 interstate transport SIP *disapprovals* are of national significance and judicial review should occur in the D.C. Circuit.

EPA applies the same four-step framework to assess state-specific contributions in all 44 SIP actions. The only difference is that EPA voluntarily packaged the SIP *disapprovals* into a single notice. This simple act does not provide a basis for determining the proper venue under Section 307(b)(1). *See* 42 U.S.C. § 7607(b)(1). This Court should therefore reject EPA's assertion that Utah's SIP disapproval is of nationwide scope or effect.

## CONCLUSION

Utah respectfully requests that the Court deny EPA's motion to transfer the Petition to the D.C. Circuit or dismiss based on improper venue.

Dated: April 6, 2023.

Respectfully submitted,

*/s/ Melissa A Holyoak*

Sean D. Reyes
    ATTORNEY GENERAL OF UTAH
Melissa A. Holyoak
    SOLICITOR GENERAL
    *Counsel of Record*
Office of the Attorney General
Utah State Capitol Complex
350 North State Street Suite 230
Salt Lake City, UT 84114-2320
Ph. 801-538-9600
melissaholyoak@agutah.gov

William L. Wehrum
WEHRUM ENVIRONMENTAL LAW LLC
1629 K Street, NW, Suite 300
Washington, D.C. 20006
Ph. 302-300-0388
William_Wehrum@comcast.net

Emily C. Schilling
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
Ph. 801-799-5753 / Fax 202-747-6574
ecschilling@hollandhart.com

Kristina (Tina) R. Van Bockern
Aaron B. Tucker
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Ph. 303-295-8107 / Fax 720-545-9952
trvanbockern@hollandhart.com
abtucker@hollandhart.com
*Attorneys for Petitioner State of Utah*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the format and word limit of Fed. R. App. P. 27(d)(1)–(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,200 words. This document also complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.

Dated: April 6, 2023

*/s/ Melissa A. Holyoak*

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to Fed. R. App. P. 25(c), that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter, who are registered with the Court's CM/ECF system.

Dated: April 6, 2023

*/s/ Melissa A. Holyoak*