## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

| | |
|---|---|
| PACIFICORP, DESERET GENERATION & TRANSMISSION CO-OPERATIVE, *and* UTAH MUNICIPAL POWER AGENCY,<br><br>Petitioners,<br><br>*v.*<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, *and* MICHAEL REGAN, *Administrator, U.S. Environmental Protection Agency*,<br><br>Respondents. | Case No. 23-9512 |
| UTAH ASSOCIATED MUNICIPAL POWER SYSTEMS,<br><br>Petitioner,<br><br>*v.*<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, *and* MICHAEL REGAN, *Administrator, U.S. Environmental Protection Agency*,<br><br>Respondents. | Case No. 23-9520 |

## JOINT RESPONSE TO RESPONDENTS' OPPOSED MOTION TO TRANSFER THE PETITION FOR REVIEW TO THE D.C. CIRCUIT OR DISMISS BASED ON IMPROPER VENUE

*(Counsel listed on following pages)*

STEVEN J. CHRISTIANSEN
DAVID C. REYMANN
PARR BROWN GEE & LOVELESS
101 South 200 East, Suite 700
Salt Lake City, UT 84111
(801) 532-7840
schristiansen@parrbrown.com
dreymann@parrbrown.com

*Attorneys for Petitioner Deseret Generation & Transmission Co-Operative*

ALAN I. ROBBINS
DEBRA D. ROBY
THOMAS B. STEIGER III
WASHINGTON ENERGY LAW LLP
900 17th St. NW, Suite 500-A
Washington, D.C. 20006
(703) 785-9270
arobbins@washington
energylaw.com
droby@washington
energylaw.com
tsteiger@washington
energylaw.com

*Attorneys for Petitioner Utah Municipal Power Agency*

MISHA TSEYTLIN
*Counsel of Record*
KEVIN M. LEROY
EMILY A. O'BRIEN
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240 (MT)
(312) 759-1939 (fax)
misha.tseytlin@troutman.com
kevin.leroy@troutman.com
emily.obrien@troutman.com

MARIE BRADSHAW DURRANT
*Assistant General Counsel*
CHRISTIAN C. STEPHENS
*Senior Attorney*
PACIFICORP
1407 North Temple
Suite 320
Salt Lake City, UT 84116
(801) 220-4707
marie.durrant@pacificorp.com

CARROLL WADE MCGUFFEY III
MELISSA HORNE
TROUTMAN PEPPER
HAMILTON SANDERS LLP
600 Peachtree St. N.E.
Suite 3000
Atlanta, GA 30308
(404) 885-3698 (CM)
(404) 885-3286 (MH)
mack.mcguffey@troutman.com
melissa.horne@troutman.com

*Attorneys for PacifiCorp*

H. Michael Keller
Artemis D. Vamianakis
Fabian VanCott
95 South State Street, Suite 2300
Salt Lake City, Utah 84111
(801) 531-8900
mkeller@fabianvancott.com
avamianakis@fabianvancott.com

Emily L. Wegener
*General Counsel*
Utah Associated Municipal
Power Systems
155 North 400 West, Suite 480
Salt Lake City, Utah 84103
(801) 566-3938
emily@uamps.com

*Attorneys for Petitioner Utah
Associated Municipal Power
Systems*

## TABLE OF CONTENTS

INTRODUCTION...................................................................................1

ARGUMENT .......................................................................................2

   I.  Utah Industries Incorporate Utah's Arguments Against Transfer Of Venue To The D.C. Circuit...........................................2

  II.  EPA's Venue Transfer Request Is Legally Incorrect For The Additional Reason That Particular Circumstances Surrounding Utah's SIP Application Require A Local Or Regional Evaluation ........................................................................3

CONCLUSION ...................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*ATK Launch Sys., Inc. v. U.S. EPA,*
   651 F.3d 1194 (10th Cir. 2011) ............................................... 1, 4, 18

*Oklahoma v. U.S. EPA,*
   723 F.3d 1201 (10th Cir. 2013) ....................................................... 1

*Sierra Club v. U.S. EPA,*
   47 F.4th 738 (D.C. Cir. 2022) ......................................................... 5

*Texas v. U.S. EPA,*
   829 F.3d 405 (5th Cir. 2016) ........................................... 4, 5, 14, 18

*Texas v. U.S. EPA,*
   983 F.3d 826 (5th Cir. 2020) ..................................................... 5, 17

**Statutes**

42 U.S.C. § 7410 ...................................................................... 17

42 U.S.C. § 7607 ................................................................. 1, 3, 4, 18

**Regulations**

EPA, Air Plan Disapproval; Utah; Interstate Transport of Air
   Pollution for the 2015 8-Hour Ozone National Ambient
   Air Quality Standards, 87 Fed. Reg. 31,470 (May 24,
   2022) ........................................................................ 6, 11, 12, 13

EPA, Air Plan Disapprovals; Interstate Transport of Air Pollution
   for the 2015 8-Hour Ozone National Ambient Air Quality
   Standards, 88 Fed. Reg. 9,336 (Feb. 13, 2023) ....................... 12, 13

National Ambient Air Quality Standards for Ozone, 80 Fed. Reg.
   65,292 (Oct. 26, 2015).......................................................... 8, 9, 15

**Other Authorities**

2015 State of Utah 110(a)(2) SIP Infrastructure Elements for
   Ozone, EPA-R08-OAR-2022-0315-0007 (Jan. 29, 2020)...... 7, 10, 11

A.O. Langford, et al., *Entrainment of Stratospheric Air and Asian Pollution by the Convective Boundary Lawyer in the Southwestern U.S.*, 122 J. of Geophys. Res.: Atmos. 1312 (2017) .................................................................. 10

Allen S. Lefohn, et al., *Quantifying the Importance of Stratospheric-Tropospheric Transport on Surface Ozone Concentrations at High- and Low-Elevation Monitoring Sites in the United States*, 62 Atmos. Env't 646 (2012) ......................... 16

Allen S. Lefohn, et al., *The Importance of Stratospheric-Tropospheric Transport in Affecting Surface Ozone Concentrations in the Western and Northern Tier of the United States*, 45 Atmos. Env't 4845 (2011) ................................. 17

Berkshire Hathaway Energy Company Comment, EPA-HQ-OAR-2021-0668-0554 (Apr. 6, 2022) ....................................... 14

Cal. Air Res. Bd., California Infrastructure State Implementation Plan (SIP) Revision (Jan. 19, 2016) .......................... 9, 16

Daniel A. Jaffe, et al., *Scientific Assessment of Background Ozone Over the U.S.: Implications for Air Quality Management*, EPA Public Access (Oct. 23, 2018) .................................... 9

Meiyun Lin, et al., *Springtime High Surface Ozone Events Over the Western United States: Quantifying the Role of Stratospheric Intrusions*, 117 J. Geophys. Res. D00V22 (2012) .................................................................. 16

Memorandum from Stephen D. Page, Director, Office of Air Quality Planning & Standards, EPA, Information on Interstate Transport "Good Neighbor' Provision for the 2008 Ozone National Ambient Air Quality Standards (NAAQS) under Clean Air Act (CAA) Section 110(a)(2)(D)(i)(I) (Jan. 22, 2014) .................................................................. 15

PacifiCorp, Public Comments on EPA's Proposed Disapproval of Utah's Ozone Transport Ozone SIP, EPA-R08-OAR-2022-0315-0014 (July 25, 2022) .................................... *passim*

Ramboll Report, *Evaluation of Utah and Wyoming Ozone Contributions in EPA's Proposed Good Neighbor Plan for the 2015 Ozone NAAQS* (June 2022) ...................................................14

Rebecca R. Buchholz, et al., *New Seasonal Pattern of Pollution Emerges from Changing North American Wildfires*, Nature Communications (2022) ...................................................8

State of Utah Dep't of Envtl. Quality, Public Comments on Air Plan Disapproval; Utah; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standard, EPA-R08-OAR-2022-0315-0011 (July 22, 2022) ...................................................8, 9, 10

## INTRODUCTION

The Clean Air Act ("Act") adopts a "cooperative-federalism approach to regulate air quality," with individual States bearing the responsibility to adopt a State Implementation Plan ("SIP") with "federal oversight" by the Environmental Protection Agency ("EPA"). *Oklahoma v. U.S. EPA*, 723 F.3d 1201, 1204 (10th Cir. 2013) (citation omitted). Consistent with the state-specific nature of this SIP process, the Act provides that EPA's SIP actions—like the approval or disapproval of a State's SIP—are local or regional in nature and are thus reviewed only in the local Circuit Courts.  42 U.S.C. § 7607(b)(1).

EPA's disapproval of Utah's SIP is just the sort of "undisputably regional action" that the Act venues in local Circuit Courts, *ATK Launch Sys., Inc. v. U.S. EPA*, 651 F.3d 1194, 1199 (10th Cir. 2011), for the reasons the State of Utah has explained in its contemporaneously filed Opposition.  The Petitioners in Docket Nos. 23-9512 and 23-9520 ("Utah Industries") file this Opposition to emphasize an additional reason why EPA's disapproval of Utah's SIP is a "locally or regionally applicable" action, 42 U.S.C. § 7607(b)(1), which belongs in the Tenth Circuit: EPA's disapproval of Utah's SIP involves unique factual considerations that are

specific to Utah, relating to the State's unique topographical, geographical, and meteorological characteristics. While EPA's Transfer Motion ignores the factual particularities underlying Utah's SIP submission, these state-specific factors are central to EPA's erroneous disapproval of that SIP, confirming that venue is proper in this Court.

## ARGUMENT

### I. Utah Industries Incorporate Utah's Arguments Against Transfer Of Venue To The D.C. Circuit

To avoid duplicating arguments asserted by other petitioners responding to EPA's same motions filed in this case and the cases docketed at Nos. 23-9509, 23-9514, and 23-9520, *see, e.g.*, Order, *PacifiCorp v. EPA*, No.23-9512, Dkt. Entry Dated Mar. 16, 2023, Utah Industries adopt and incorporate the arguments that the State of Utah makes in opposition to EPA's Transfer Motion. *See* State of Utah's Response To Respondent's Opposed Motion To Transfer The Petition For Review To The D.C. Circuit Or Dismiss Based On Improper Venue. As Utah explains, EPA's decision to package the Utah SIP disapproval with other States' SIP disapprovals (as well as deferrals as to two other States' SIP submissions) does not transform the local nature of the Utah SIP disapproval into a "nationally applicable" or "nationwide" action,

notwithstanding EPA's inconsistently applied but vehemently asserted policy preference for consistency across States. That claimed preference cannot serve as a lawful basis to disapprove the Utah SIP, particularly where, as here, such consistency is not mandated by the Act, not accurately applied as to Utah, and not even consistently applied across the States. Notably, as Utah points out, EPA regularly treats SIP approvals as locally applicable, notwithstanding its use of the same four-step analytical approach for such approvals.

## II. EPA's Venue Transfer Request Is Legally Incorrect For The Additional Reason That Particular Circumstances Surrounding Utah's SIP Application Require A Local Or Regional Evaluation

**A.** Section 307(b)(1) of the Act establishes the appropriate venue for petitions for review based upon whether they challenge local/regional or national actions. A petition challenging EPA action that is "locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit." 42 U.S.C. § 7607(b)(1). A petition for review challenging "nationally applicable . . . final action taken[ ] by the Administrator . . . may be filed only in the United States Court of Appeals for the District of Columbia." *Id.*

Courts consider various factors in deciding whether EPA action is local/regional or national under Section 307(b)(1). When a decision is based "on a number of intensely factual determinations . . . all related to the particularities of the emissions sources" in individual States, that characteristic supports a finding of only local or regional scope and effect, even if it involves States in two different circuits. *Texas v. U.S. EPA*, 829 F.3d 405, 421–22 (5th Cir. 2016) ("*Texas I*"). On the other hand, an action is "nationally applicable" when it applies generally to numerous and disparate regions of the country "with no local or regional connection to one another, such as California, Pennsylvania, and Alabama," or involves a "uniform process and standard across the country." *See ATK Launch Sys.*, 651 F.3d at 1197.

The third venue prong in Section 307(b)(1) involves situations where local or regional actions might nevertheless have a sufficiently nationwide scope or effect to support venue in the D.C. Circuit. Under this basis for venue, EPA must establish two necessary elements to transfer venue. First, the EPA action at issue must *actually* be "based on a determination of nationwide scope or effect." 42 U.S.C. § 7607(b)(1). Second, EPA must "find[ ] and publish[ ] that such [EPA] action is based

on such a determination." *Id.* Courts must assess "whether locally or regionally applicable action is based on a determination of nationwide scope or effect when EPA so finds and publishes." *Sierra Club v. U.S. EPA*, 47 F.4th 738, 746 (D.C. Cir. 2022). "The court—not EPA—determines both the scope of an action's applicability and whether it was based on a determination of nationwide scope or effect," without deference to EPA. *Texas v. U.S. EPA*, 983 F.3d 826, 833 (5th Cir. 2020) ("*Texas II*"); *Texas I*, 829 F.3d at 421 (noting that the court reviews the first element of this venue basis "*de novo*" after an "independent assessment of the scope of the determination").

In considering whether a locally or regionally applicable action nonetheless belongs in the D.C. Circuit because of EPA's finding as to its alleged nationwide scope or effect, courts will again consider broadly the circumstances surrounding the EPA action. The Court's proper consideration of the issue "focuses on . . . the determinations on which the [action] is based," not on the "nature of the rule as a whole." *Texas I*, 829 F.3d at 422. Courts will also consider "EPA's prior actions" to determine whether it is treating like situations similarly. *Id.* at 422–23.

**B.** In addition to the powerful reasons that the State of Utah has provided explaining that EPA's Utah SIP disapproval is a local or regional action, which Utah Industries adopt and incorporate as if provided herein, *supra* Part I, the particular factual circumstances surrounding Utah's SIP application further underscore the individualized and local nature of EPA's decision, supporting venue in this Court. The critical determination that Utah made in its SIP submission—that Utah sources do not "significantly contribute" to downwind ozone problems—was highly dependent on state-specific facts and analysis within a weight-of-the-evidence approach. EPA's disapproval of that SIP was thus necessarily state-specific as well.

Utah based its SIP in significant part on the recognition that numerous state- and region-specific factors beyond Utah's control affect the ozone concentrations at the relevant Colorado receptors. *See* EPA, Air Plan Disapproval; Utah; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 87 Fed. Reg. 31,470, 31,740, 31,477, 31,479 (May 24, 2022). In particular, Utah recognized that the significant and outsized impact of uncontrollable sources of ozone like wildfires and international emissions on Colorado

monitors distinguishes the region from many other States and regions, and that those uncontrollable sources must be considered in evaluating whether the contribution of Utah's power plant $NO_x$ emissions on ambient ozone concentrations is "significant."   2015 State of Utah 110(a)(2) SIP Infrastructure Elements for Ozone, at 9–10, EPA-R08-OAR-2022-0315-0007 (Jan. 29, 2020)[1] ("Utah SIP").    Utah also highlighted the significant emission reductions already achieved in the State to reduce ozone concentrations in the region.  Utah SIP at 10–12.  EPA's disapproval was based on its rejection of these state-specific aspects of Utah's evaluation, rendering EPA's decision equally state-specific.

For example, in crafting its SIP, Utah recognized that the increasingly numerous and intense wildfires along the West Coast have caused elevated levels of ozone in western States like Utah and Colorado. State of Utah Dep't of Envtl. Quality, Public Comments on Air Plan Disapproval; Utah; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standard, at 3 & n.8, EPA-

---

[1] Available at https://www.regulations.gov/document/EPA-R08-OAR-2022-0315-0007.

R08-OAR-2022-0315-0011 (July 22, 2022)[2] ("Utah DEQ Comment") (citing Rebecca R. Buchholz, et al., *New Seasonal Pattern of Pollution Emerges from Changing North American Wildfires*, Nature Communications (2022)[3]). Increasing wildfires along the West Coast and in the Pacific Northwest "impact surface air quality, even at large distances downwind of the wildfires" thereby affecting "surface ozone and fine particulate matter," which have caused statistically significant increases in respiratory deaths in Colorado. Buchholz, *supra*, at 6; *see also* PacifiCorp, Public Comments on EPA's Proposed Disapproval of Utah's Ozone Transport Ozone SIP, Appendix A at 2, EPA-R08-OAR-2022-0315-0014 (July 25, 2022)[4] ("PacifiCorp Comment"). As a result, "certain high-elevation sites in the western U.S. are impacted by . . . [ozone] originating from wildfire emissions." PacifiCorp Comment at 13 & n.50 (quoting National Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 65,292, 65,300 (Oct. 26, 2015)).

---

[2] Available at https://www.regulations.gov/comment/EPA-R08-OAR-2022-0315-0011.

[3] Available at https://www.nature.com/articles/s41467-022-29623-8.pdf.

[4] Available at https://www.regulations.gov/comment/EPA-R08-OAR-2022-0315-0014.

Utah also recognized that stratospheric intrusions, during which ozone found in the earth's stratosphere is funneled down to ground level, significantly affect ozone concentrations in the high elevation regions of the western United States like Colorado. Utah DEQ Comment at 3 & n.7 (citing Daniel A. Jaffe, et al., *Scientific Assessment of Background Ozone Over the U.S.: Implications for Air Quality Management* at 10, 23–24 & fig.3, EPA Public Access (Oct. 23, 2018)[5]); PacifiCorp Comment at 13 & n.50, App. at 2 & n.1. These intrusions occur far more frequently in, and contribute far more ozone to, Colorado, due to the region's mountainous and high-elevation topography. In the past, EPA itself has recognized that "high-elevation sites in the western U.S." are uniquely impacted by this natural source of ozone, making any modeling less accurate or helpful. PacifiCorp Comment at 13–14 & n.50 (quoting 80 Fed. Reg. at 65,300; citing Cal. Air Res. Bd., California Infrastructure State Implementation Plan (SIP) Revision, at 15 (Jan. 19, 2016)[6]).

---

[5] Available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6198683/pdf/nihms-989625.pdf.

[6] Available at https://ww2.arb.ca.gov/sites/default/files/classic/planning/sip/infrasip/docs/2015_transport_staff_report.pdf.

Another uncontrollable source of ozone—emissions from international sources—also has a much greater effect on western and mountain States like Utah and Colorado than other parts of the country. Utah DEQ Comment at 3 & n.10 (citing A.O. Langford, et al., *Entrainment of Stratospheric Air and Asian Pollution by the Convective Boundary Lawyer in the Southwestern U.S.*, 122 J. of Geophys. Res.: Atmos. 1312 (2017)[7]); PacifiCorp Comment at 13 & n.50. Studies have shown that international ozone transported from countries in Asia has "a much greater impact on surface ozone in the southwestern U.S. and Intermountain West," including Colorado, "than in other regions of the country." A.O. Langford, *supra*, at 1313. Utah specifically acknowledged these international emissions in its SIP and relied on that evaluation as a basis for its conclusions. Utah SIP at 9–10.

Indeed, in the documentation that Utah submitted to EPA in support of its SIP, it explained that "uncontrollable emissions from Canada/Mexico, Offshore, Fire, and Biogenic emissions and the Initial/Boundary Conditions at each modeled receptor in the Denver

---

[7] Available at https://agupubs.onlinelibrary.wiley.com/doi/epdf/ 10.1002/2016JD025987.

[nonattainment] area comprise over 50 percent of emissions at those sites." Utah SIP at 9. As a result of this determination, Utah concluded that its sources should not be evaluated for additional control requirements because they do not significantly contribute to Colorado's ozone problems. *Id.* Utah also determined that additional control evaluations were unnecessary in light of the significant emission reductions already achieved through the adoption of more than two dozen other state-specific rules, which are expected to further diminish the possibility that Utah could significantly contribute to downwind ozone concentrations. *Id.* at 10–12.

EPA grappled with each of these state-specific findings. In its Utah-specific disapproval, EPA acknowledged the effects of "contributions from other sources, including international or non-anthropogenic emissions," on ozone emissions in Utah and Colorado, but simply claimed that they were insufficient to "excuse Utah from addressing its own significant contribution to nonattainment or interference with maintenance at downwind areas." 87 Fed. Reg. at 31,482. In its final disapproval, EPA again acknowledged the "higher level of contributions from . . . international contributions in the west,"

as compared to the eastern United States, but again claimed that this particular regional factor was insufficient to support approval of western States' SIPs, including Utah's. EPA, Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9,336, 9,379 (Feb. 13, 2023). EPA's Utah-specific disapproval also specifically examined Utah's submission of emissions contributions from wildfires, but rejected their relevance in comparison to what it deemed was Utah's "own significant contributions to nonattainment or interference with maintenance at downwind areas." 87 Fed. Reg. at 31,477, 31,482. EPA even acknowledged in its final disapproval that it considered "contributions from wildfire and prescribed fire $NO_x$ and VOC emissions" for "each state, individually." 88 Fed. Reg. at 9,353. And EPA rejected Utah's arguments about the effects of nonanthropogenic sources of ozone, which necessarily included ozone effects from its natural mountainous topography, again underscoring that EPA's action was based upon local factual matters specifically relevant to Utah and Colorado. *See* 87 Fed. Reg. at 31,477, 31,482 (proposing to disapprove the SIP even though "52 percent–59 percent (depending on receptor) of the total ozone concentrations at the Colorado

receptors are from non-anthropogenic or non-U.S. emissions sources.");
88 Fed. Reg. at 9,360.

Because EPA's decision was based on rejecting Utah's weight-of-the-evidence evaluation of state- and region-specific factors, EPA's action by necessity is state- and region-specific in nature, and the review of that decision by a court will necessarily require review of those state- and region-specific aspects of EPA's decision.

Even beyond these specific factual matters, the particular methodology that EPA employed also confirms the individualized nature of its disapproval of Utah's SIP. Although EPA claims that it needed to reject Utah's reliance on a 1 ppb alternative threshold for evaluating its contribution due to a need for nationwide consistency, EPA still had to reject Utah's submission of a state-specific analysis justifying the use of that threshold, and in doing so focused on a Utah-specific evaluation of the 1 ppb threshold. 87 Fed. Reg. at 31,478 (comparing the specific percentage of Utah contribution captured under either threshold). Therefore, even where EPA can point to a nationwide policy preference in support of its action, the application of such policies nevertheless

required state-specific attention, further confirming the local nature of EPA's action in denying Utah's SIP.

Further, EPA's decision to apply a nationwide standard to ozone transport in the West is an unfounded departure from its previous policy position. Consideration of "EPA's prior actions" is an important part of a court's venue determination to ensure EPA treatment of like situations is consistent. *Texas I*, 829 F.3d at 422–23. When evaluating ozone transport for the 2008 ozone NAAQS, EPA declined to impose federal "good neighbor" standards on western States, since these standards were developed using eastern-state conditions and modeling. Instead, EPA elected to treat western States on a "case-by-case" basis and did not impose a nationwide standard on any State west of the Great Plains and Texas. *See* Berkshire Hathaway Energy Company Comment, Ex. A at 38–45, EPA-HQ-OAR-2021-0668-0554 (Apr. 6, 2022)[8] (citing Ramboll Report, *Evaluation of Utah and Wyoming Ozone Contributions in EPA's Proposed Good Neighbor Plan for the 2015 Ozone NAAQS* (June 2022))

---

[8] Available at https://www.regulations.gov/comment/EPA-HQ-OAR-2021-0668-0554.

(explaining why EPA's eastern-state methods are not appropriate for western States like Utah and Colorado).

EPA based its previous non-nationwide policy approach for western States on exactly the same reasons Utah used for the weight-of-evidence approach in its SIP: different geography, meteorology, background ozone levels, wildfire impacts, and stratospheric ozone events in the West. *See, e.g.*, 80 Fed. Reg. at 65,300 ("[O]bservational and modeling analyses have concluded that [ozone] concentrations in some locations in the U.S. on some days can be substantially influenced by sources that cannot be addressed by domestic control measures. In particular, certain high-elevation sites in the western U.S. are impacted by a combination of non-U.S. sources like international transport, or natural sources such as stratospheric [ozone], and [ozone] originating from wildfire emissions."); Memorandum from Stephen D. Page, Director, Office of Air Quality Planning & Standards, EPA, Information on Interstate Transport "Good Neighbor" Provision for the 2008 Ozone National Ambient Air Quality Standards (NAAQS) under Clean Air Act (CAA) Section 110(a)(2)(D)(i)(I), at 4 (Jan. 22, 2014) (recommending ozone transport in western States

should be evaluated on a case-by-case basis);[9] Cal. Air Res. Bd., California Infrastructure State Implementation Plan (SIP) Revision, *supra*, at 15, (finding that in contrast to the East, ozone transport in the West has a much smaller proportion of local emissions and that the larger states and complex terrain in the West make modeling less accurate and helpful as compared to the East); Meiyun Lin, et al., *Springtime High Surface Ozone Events Over the Western United States: Quantifying the Role of Stratospheric Intrusions*, 117 J. Geophys. Res. D00V22 (2012) (cited at PacifiCorp Comment at 14 n.50);[10] Allen S. Lefohn, et al., *Quantifying the Importance of Stratospheric-Tropospheric Transport on Surface Ozone Concentrations at High- and Low-Elevation Monitoring Sites in the United States*, 62 Atmos. Env't 646 (2012) (cited at PacifiCorp Comment at 14 n.50);[11] Allen S. Lefohn, et al., *The Importance of Stratospheric-Tropospheric Transport in Affecting Surface Ozone Concentrations in the*

---

[9] Available at https://www.epa.gov/sites/default/files/2015-10/documents/goodneighborprovision2008naaqs.pdf.

[10] Available at https://www.gfdl.noaa.gov/wp-content/uploads/files/user_files/m1l/meiyunlin_2012jd01815.pdf.

[11] Available at https://gml.noaa.gov/aftp/pub/oltmans/Background_O3/Lefohn%20et%20al._STE_influence2_Atmos_Env_published_Sep2012.pdf.

*Western and Northern Tier of the United States*, 45 Atmos. Env't 4845 (2011) (cited at PacifiCorp Comment at 14 n.50).

EPA's claim that a nationwide standard is now appropriate for Utah is an unfounded and unexplained departure from its previous position. EPA's newly asserted (but then inconsistently applied) preference for nationwide consistency also does not align with the CAA's stated intent that SIPs be locally and regionally focused and only include "emission limitations and other control measures, means, or techniques . . . as may be necessary or appropriate to meet the applicable requirements" in each State, *see* 42 U.S.C. § 7410(a)(2).

**C.** EPA fails entirely to address the inherently local factors justifying its disapproval of Utah's SIP. Instead, EPA merely contends that it has "broad discretion" and "is entitled to significant deference" regarding whether its denial of Utah's SIP has a nationwide scope or effect. EPA Mot.15 & n.8. But EPA is entitled to no such deference on the question of whether EPA's action *actually* involves a nationwide scope or effect. *Texas II*, 983 F.3d at 833 ("The court—not EPA— determines both the scope of an action's applicability and whether it was based on a determination of nationwide scope or effect."). Instead, courts

"must make an independent assessment" to determine if EPA's action has a nationwide scope or effect, wholly independent of the Administrator's own judgment, with no deference to EPA. *Texas I*, 829 F.3d at 421.

Similarly unavailing is EPA's implied argument that its nationwide-scope-or-effect determination is correct as to Utah simply because it reached similar conclusions for multiple States. EPA Mot.16 & n.9. But EPA finding arguments from multiple States all "legally inadequate" for similar reasons simply has no bearing on whether EPA's disapproval is regional or local in nature where, as here, reaching those conclusions required EPA to evaluate each State's individual facts and circumstances.

In short, EPA's basis for rejecting Utah's SIP was highly specific to Utah and its immediate neighbors, further supporting the conclusion that any consideration of Utah's SIP by EPA was an "undisputably regional action," *ATK Launch Sys.*, 651 F.3d at 1199, which is properly challenged in this Court, 42 U.S.C. § 7607(b)(1).

## CONCLUSION

The Court should deny EPA's Motion To Transfer The Petition For Review To The D.C. Circuit Or Dismiss Based On Improper Venue.

Dated: April 6, 2023

Respectfully Submitted,

/s/Misha Tseytlin

MISHA TSEYTLIN
*Counsel of Record*
KEVIN M. LEROY
EMILY A. O'BRIEN
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240 (MT)
(312) 759-1939 (fax)
misha.tseytlin@troutman.com
kevin.leroy@troutman.com
emily.obrien@troutman.com

STEVEN J. CHRISTIANSEN
DAVID C. REYMANN
PARR BROWN GEE & LOVELESS
101 South 200 East, Suite 700
Salt Lake City, UT 84111
(801) 532-7840
schristiansen@parrbrown.com
dreymann@parrbrown.com

*Attorneys for Petitioner Deseret Generation & Transmission Co-Operative*

ALAN I. ROBBINS
DEBRA D. ROBY
THOMAS B. STEIGER III
WASHINGTON ENERGY LAW LLP
900 17th St. NW, Suite 500-A
Washington, D.C. 20006
(703) 785-9270
arobbins@washington
energylaw.com
droby@washington
energylaw.com
tsteiger@washington
energylaw.com

*Attorneys for Petitioner Utah Municipal Power Agency*

MARIE BRADSHAW DURRANT
*Assistant General Counsel*
CHRISTIAN C. STEPHENS
*Senior Attorney*
PACIFICORP
1407 North Temple
Suite 320
Salt Lake City, UT 84116
(801) 220-4707
marie.durrant@pacificorp.com

*Attorneys for PacifiCorp*

H. MICHAEL KELLER
ARTEMIS D. VAMIANAKIS
FABIAN VANCOTT
95 South State Street
Suite 2300
Salt Lake City, Utah 84111
(801) 531-8900
mkeller@fabianvancott.com
avamianakis@fabianvancott
.com

Emily L. Wegener
*General Counsel*
Utah Associated Municipal
Power Systems
155 North 400 West, Suite 480
Salt Lake City, Utah 84103
(801) 566-3938
emily@uamps.com

*Attorneys for Petitioner Utah
Associated Municipal Power
Systems*

CARROLL WADE MCGUFFEY III
MELISSA HORNE
TROUTMAN PEPPER
HAMILTON SANDERS LLP
600 Peachtree St. N.E.
Suite 3000
Atlanta, GA 30308
(404) 885-3698 (CM)
(404) 885-3286 (MH)
mack.mcguffey@troutman.com
melissa.horne@troutman.com

*Attorneys for PacifiCorp*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify the following:

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because this Motion contains 3,298 words, excluding the parts of the Motion exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1).

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: April 6, 2023

/s/Misha Tseytlin
MISHA TSEYTLIN
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240 (MT)
(312) 759-1939 (fax)
misha.tseytlin@troutman.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of April, 2023, I filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

Dated: April 6, 2023

/s/Misha Tseytlin
MISHA TSEYTLIN
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240 (MT)
(312) 759-1939 (fax)
misha.tseytlin@troutman.com