Nos. 23-9509, 23-9512, 23-9514, 23-9520, 23-9521

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

———————————

STATE OF UTAH, et al.,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Respondents*.

———————————

PETITIONS FOR REVIEW OF A FINAL AGENCY ACTION OF THE UNITED
STATES ENVIRONMENTAL PROTECTION AGENCY

———————————

**RESPONDENTS' CONSOLIDATED REPLY IN SUPPORT OF MOTION
TO TRANSFER THE PETITIONS FOR REVIEW TO THE D.C. CIRCUIT
OR DISMISS BASED ON IMPROPER VENUE**

———————————

TODD KIM
*Assistant Attorney General*

*Of Counsel:*
ROSEMARY HAMBRIGHT KABAN    ALEXANDRA L. ST. ROMAIN
DANIEL P. SCHRAMM    *U.S. Department of Justice*
*Office of the General Counsel*    *Environment and Natural Resources*
*U.S. Environmental Protection*    *Division*
*Agency*    *P.O. Box 7611*
*Washington, DC*    *Washington D.C. 20044-7611*

# TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................i

TABLE OF AUTHORITIES ...................................................................ii

INTRODUCTION ..................................................................................1

ARGUMENT ........................................................................................2

    I.     The Final Rule is Nationally Applicable................................................2

    II.    EPA Properly Made and Published a Finding that the Final
          Rule Is Based on a Determination of Nationwide Scope or
          Effect. ...........................................................................................12

CONCLUSION....................................................................................18

CERTIFICATES OF COMPLIANCE....................................................19

CERTIFICATE OF SERVICE ..............................................................20

# TABLE OF AUTHORITIES

## CASES

*ABF Freight Sys. Inc. v. NLRB*,
   510 U.S. 317 (1993) ................................................................13

*Alcoa, Inc. v. EPA*,
   No. 04-1189, 2004 WL 2713116 (D.C. Cir. Nov. 24, 2004) ...........................5, 13

*Am. Rd. & Transp. Builders Ass'n v. EPA*,
   705 F.3d 453 (D.C. Cir. 2013) ................................................5

*ATK Launch Sys., Inc. v. EPA*,
   651 F.3d 1194 (10th Cir. 2011) ....................................... 1, 3, 5, 6, 8, 9, 13, 14, 17

*Exelon Wind 1, L.L.C. v. Nelson*,
   766 F.3d 380 (5th Cir. 2014) .........................................................12, 13

*Midwest Ozone Group v. EPA*,
   61 F.4th 187 (D.C. Cir. 2023) ..................................................5, 9, 10

*Mont. Sulphur & Chem. Co. v. EPA*,
   666 F.3d 1174 (9th Cir. 2012) ................................................7

*NAACP v. FPC*,
   425 U.S. 662 (1976) .............................................................3, 4

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
   138 S. Ct. 617 (2018) ................................................................4

*New York v. EPA*,
   133 F.3d 987 (7th Cir. 1998) .................................................16, 17

*NRDC v. Thomas*,
   1838 F.2d 1224 (D.C. Cir. 1988) ..........................................17

*RMS of Ga., LLC v. EPA*,
No. 21-14213, 2023 WL 2925109 (11th Cir. Apr. 13, 2023) .................................3

*Sierra Club v. EPA*,
774 F.3d 383 (7th Cir. 2014) ................................................................................7

*Sierra Club v. EPA*,
793 F.3d 656 (6th Cir. 2015) ................................................................................7

*Sierra Club v. EPA*,
47 F.4th 738 (D.C. Cir. 2022) ............................................................................14

*S. Ill. Power Coop. v. EPA*,
863 F.3d 666 (7th Cir. 2017) ..........................................................1, 3, 5, 6, 8

*Texas v. EPA* (*2011 Texas*),
No. 10-60961, 2011 WL 710598 (5th Cir. 2011) ..................................5, 6, 13, 17

*Texas v. EPA* (*2016 Texas*),
829 F.3d 405 (5th Cir. 2016) ..........................................................3, 6, 12

*Texas v. EPA*,
983 F.3d 826 (5th Cir. 2020) ................................................................................7

*U.S. Magnesium, LLC v. EPA*,
690 F.3d 1157 (10th Cir. 2012) ............................................................................7

*Westar Energy, Inc. v. EPA*,
608 F. App'x 1 (D.C. Cir. 2015) ..........................................................................6

*West Virginia Chamber of Commerce v. Browner*,
No. 98-1013, 1998 WL 827315 (4th Cir. Dec. 1, 1998) .....................................6, 8

**STATUTES**

28 U.S.C. § 1391(e)(1) ..........................................................................................4

33 U.S.C. § 1369(b)(1) ..........................................................................................4

42 U.S.C. § 7407 ..................................................................................8

42 U.S.C. § 7410(a)(2)(D)(i)(I) ...........................................................1

42 U.S.C. § 7410(k)(3)..........................................................................8

42 U.S.C. § 7410(k)(5)..........................................................................7

42 U.S.C. § 7607(b)(1)...............................................................4, 5, 17

**FEDERAL REGISTER**

83 Fed. Reg. 65878 (Dec. 21, 2018) ....................................................8

86 Fed. Reg. 23054 (Apr. 30, 2021) ....................................................9

87 Fed. Reg. 9545 (Feb. 22, 2022) .....................................................11

87 Fed. Reg. 9798 (Feb. 22, 2022) .....................................................11

88 Fed. Reg. 9336 (Feb. 13, 2023) ...............................1, 2, 8, 9, 11, 14, 15

## INTRODUCTION

To address the nationwide problem of interstate ozone pollution, EPA applied a uniform national approach to disapprove "Good Neighbor" state implementation plan ("SIP") submissions from 21 states that failed to properly address their impacts on other states' air-quality problems as required by the Clean Air Act's ("CAA" or the "Act") Good Neighbor Provision, 42 U.S.C. § 7410(a)(2)(D)(i)(I). Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9336 (Feb. 13, 2023) ("Final Rule"). EPA chose to do so in a single, cohesive action because the states' submissions presented similar shortcomings and because doing so avoided inequitable, piecemeal approaches to an interdependent, interstate pollution problem. EPA's choice to order its administrative docket in this fashion lies within the Agency's sound discretion.

Petitioners' venue arguments fail because they turn not on what EPA actually did or said in the Final Rule, but instead on arguments related to the relief that Petitioners seek. As the Act and case law make clear, "this court must analyze whether the regulation itself is nationally applicable, not whether the effects complained of or the petitioner's challenge to that regulation is nationally applicable." *ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1197 (10th Cir. 2011); *see also S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 670-71 (7th Cir. 2017). On its

face, the Final Rule is "nationally applicable," disapproving the Good Neighbor submissions of 21 states throughout eight EPA regions and ten federal judicial circuits.  Final Rule, 88 Fed. Reg. at 9380.

Alternatively, the Final Rule is "based on a determination of nationwide scope or effect" because EPA applied nationwide policy judgments and technical analyses in evaluating each covered state's reasons for why it need not do anything to reduce its emissions impact on downwind states and disapproved each of those submissions on similar grounds.  *Id.*  EPA made and published its finding that the Final Rule is based on a determination of nationwide scope or effect.  *Id.*

Because the Final Rule is nationally applicable or, alternatively, based on a determination of nationwide scope or effect and EPA made and published a finding that it is based on such a determination, the petitions for review of the Final Rule may be filed only in the D.C. Circuit.

## ARGUMENT

## I.    The Final Rule is Nationally Applicable.

The Final Rule applies a "nationally consistent 4-step interstate transport framework" to disapprove Good Neighbor submissions for the 2015 ozone National Ambient Air Quality Standards ("NAAQS") from 21 states throughout eight of the ten EPA regions and ten federal judicial circuits.  Final Rule, 88 Fed. Reg. at 9380.  For this reason, the Final Rule is plainly nationally applicable.

Petitioners urge the Court to consider each SIP disapproval as a separate local or regional action, because each individual petitioner challenges the Final Rule only as to individual state plans. *See* Utah Resp. at 13; Okla. Resp. at 3. But, as Petitioners acknowledge, Utah Resp. at 12, and as courts, including this one, have consistently held, it is the nature of the EPA action, as a whole, that dictates the proper venue. *ATK Launch*, 651 F.3d at 1197; *Texas v. EPA* (*2016 Texas*), 829 F.3d 405, 419 (5th Cir. 2016); *S. Ill. Power*, 863 F.3d at 671; *RMS of Ga., LLC v. EPA*, No. 21-14213, 2023 WL 2925109, at *3 (11th Cir. Apr. 13, 2023) (holding that the phrase nationally applicable "describes the regulations promulgated, or final action taken, not the nature of the petition for review" (internal quotation marks and citation omitted)).

That Petitioners may have preferred that EPA issue standalone SIP disapprovals, and that EPA could have done so, are irrelevant to this Court's venue analysis (and, for the reasons explained *infra* Argument II, would not have made sense). Congress crafted an action-focused venue provision in the CAA, such that EPA's discretionary choices about how to order its docket can appropriately influence venue for challenges to those actions. *See NAACP v. FPC*, 425 U.S. 662, 668 (1976) (reiterating the "general proposition" that agencies have discretion to

determine how to shape their regulatory actions).[1]  Had Congress wanted prospective petitioners to be able to choose where to file or wanted forum to be determined based on the specific issues raised in a petition for review, Congress would have crafted such a system.  *See, e.g.*, 28 U.S.C. § 1391(e)(1) (general venue statute authorizing suit in judicial district where plaintiff resides and judicial district where substantial events giving rise to claim occurred); 33 U.S.C. § 1369(b)(1) (authorizing Clean Water Act suit in regional circuits where petitioner resides or transaction affected business).  Congress did not do so when it enacted § 7607(b)(1), and this choice reinforces that venue determinations must be based exclusively on the nature of the Final Rule, rather than on the issues raised by Petitioners in their individual petitions for review.  *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 632-33 (2018) (determining Congress's intent on the Clean Water Act's venue provision by focusing on the statute's plain language, regardless of policy considerations).

Petitioners also contend that any action disapproving SIPs is always locally or regionally applicable.  *See* Utah Resp. at 2, 22; Okla. Resp. at 1, 8-9.  Neither § 7607(b)(1) nor case law supports such a bright line rule.  Petitioners are wrong that § 7607(b)(1) requires the Final Rule to be challenged in regional courts.  *Cf.*

---

[1] For this reason, Petitioners' focus on other SIP actions is irrelevant.  *See* Utah Resp. at 15-16 & n.8, 17; Okla. Resp. at 17.

4

Okla. Resp. at 8; Utah Resp. at 11-12.  Section 7607(b)(1) provides that an EPA action "approving or promulgating any implementation plan" or a "denial or disapproval by the Administrator under subchapter I… *which is locally or regionally applicable*" may be filed only in the appropriate regional circuit.  42 U.S.C. § 7607(b)(1) (emphasis added).  It does not state that any such approval, promulgation, denial, or disapproval is "per se" locally or regionally applicable. *Cf.* Okla. Resp. at 1.[2]  Moreover, § 7607(b)(1)'s broad catch-all provision for "*any other* nationally applicable . . . final action" denotes that a challenge to a nationally applicable action, such as the one here, must be heard in the D.C. Circuit.  *ATK Launch*, 651 F.3d at 1200; *S. Ill. Power*, 863 F.3d at 671; *Texas v. EPA* (*2011 Texas*), No. 10-60961, 2011 WL 710598, at *3 (5th Cir. 2011).

Further, Petitioners' claim that EPA actions taken on a SIP are "prototypical 'locally or regionally applicable' action[s]," Okla. Resp. at 1 (quoting *Am. Rd. & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 455 (D.C. Cir. 2013)), and "undisputably regional," Utah Resp. at 13 (quoting *ATK Launch*, 651 F.3d at 1199), relies upon a faulty characterization of the action EPA took in the Final

---

[2] Thus, every EPA action "promulgating" a multistate, federal Good Neighbor plan has been reviewed in the D.C. Circuit. *See Midwest Ozone Grp. v. EPA*, 61 F.4th 187, 189 n.1 (D.C. Cir. 2023) (collecting cases); *see also Cedar Falls Utils. v. EPA*, No. 16-4504 (Feb. 22, 2017) (transferring such a challenge to the D.C. Circuit).

Rule.  On its face, the Final Rule disapproves 21 Good Neighbor SIPs, not one individual SIP, to address the complex, interwoven, and overlapping linkages between and among states in a consistent manner and is thus nationally applicable.[3] *See 2011 Texas v. EPA*, 2011 WL 710598 at *4 (explaining that "the legislative history of the Act indicates that [the phrase 'locally or regionally applicable'] was intended to apply only to 'review of the approval or promulgation of implementation plans *which run only to one air quality control region*'").

Petitioners attempt to distinguish this case from *ATK Launch*, *Southern Illinois Power*, and *West Virginia Chamber of Commerce v. Browner*, No. 98-1013, 1998 WL 827315 at *6-7 (4th Cir. Dec. 1, 1998), by focusing on the nature of the statutory authority under which EPA acts.  *See* Utah Resp. at 19-21; Okla Resp. at 9-11.  But their attempt misses the mark.  As an initial matter and as already discussed, whether an EPA action is nationally applicable "turns on the legal impact of the action as a whole," *2016 Texas*, 829 F.3d at 419, not the "type" of statutory authority EPA relies upon to act, *cf.* Utah Resp. at 22.  Indeed, SIP

---

[3] The cases cited by Oklahoma (at 9) are therefore inapposite, each involving an EPA approval or disapproval of an individual state's SIP outside of the Good Neighbor context.  By contrast, even actions challenging *single* Good Neighbor SIP disapprovals have been brought in the D.C. Circuit.  *See, e.g., Westar Energy, Inc. v. EPA*, 608 F. App'x 1 (D.C. Cir. 2015) (challenge to EPA's disapproval of Kansas's Good Neighbor SIP).  Petitioners cite no regional circuit decision reviewing EPA's action on a Good Neighbor ozone SIP because none exist.

Calls and NAAQS designations—the actions Petitioners contend are markedly

different in nature than the action EPA took in the Final Rule—have been

appropriately challenged in regional circuit courts when they involved a single

state and are local or regional.  *See, e.g., U.S. Magnesium, LLC v. EPA*, 690 F.3d

1157 (10th Cir. 2012) (challenging a SIP Call requiring Utah to revise its SIP by

promulgating a new "Unavoidable Breakdown Rule"); *Mont. Sulphur & Chem. Co.

v. EPA*, 666 F.3d 1174 (9th Cir. 2012) (challenging a SIP Call requiring Montana

to submit SIP revisions based on updated $SO_2$ NAAQS); *Texas v. EPA*, 983 F.3d

826 (5th Cir. 2020) (challenging ozone NAAQS designations of four Texas

counties); *Sierra Club v. EPA*, 793 F.3d 656 (6th Cir. 2015) (challenging

redesignation of the Cincinnati-Hamilton Ohio-Indiana nonattainment area); *Sierra

Club v. EPA*, 774 F.3d 383 (7th Cir. 2014) (challenging redesignation of three

nonattainment areas in Illinois and Wisconsin).  By contrast, as courts have

recognized, where EPA has found it appropriate to address many states or areas

under a common analytical framework in a single action, that action is nationally

applicable.  *See* Venue Mot. at 10.

Moreover, Petitioners are simply wrong that there is a meaningful distinction

between SIP Calls and NAAQS designations on the one hand and SIP disapprovals

on the other.  EPA has discretion under 42 U.S.C. § 7410(k)(5) to find that a SIP is

"substantially inadequate" to meet a given CAA requirement; if so, then it must

7

issue a SIP Call. When issuing a SIP Call, EPA may apply uniform policy judgements to multiple states' SIPs, as EPA did in the Final Rule. *See* Final Rule, 88 Fed. Reg. at 9339; Venue Mot. at 11. Petitioners offer no meaningful distinction for venue purposes between an action approving or disapproving multiple SIPs under § 7410(k)(3) and an action finding multiple SIPs substantially inadequate under § 7410(k)(5).

Similarly, Petitioners offer no meaningful distinction for venue purposes between the issuance of NAAQS designations for multiple areas of the country by applying a common multifactor analytical framework and the disapproval of SIPs for multiple states upon evaluation of states' Good Neighbor obligations by applying EPA's 4-step framework. In fact, EPA has observed that Steps 1 and 2 of its 4-step framework are closely analogous to the designation process under 42 U.S.C. § 7407. *See, e.g.*, 83 Fed. Reg. 65878, 65887 (Dec. 21, 2018) (describing how Step 1 "is analogous to the EPA's determination in the designation analysis that an area should be designated attainment" and how Step 2 "is analogous to the EPA's determination in the designation analysis that a nearby area does not contribute to a NAAQS violation in another area").

The Final Rule is therefore indistinguishable, in all relevant ways, from the SIP Calls and NAAQS designations at issue in *ATK Launch*, *Southern Illinois Power*, and *West Virginia Chamber of Commerce*. There, EPA applied a uniform

nationwide standard to a subset of states that did not meet the relevant, national standard.  Venue Mot. at 10.  Similarly, the Final Rule constitutes EPA's national interpretation of the Good Neighbor Provision's mandates, as applied to 21 states whose SIPs do not comply with the relevant standards.  Final Rule, 88 Fed. Reg. at 9362 (explaining that EPA "[e]mploy[ed] a nationally consistent approach" and applied the same policy judgments "in all actions on the 2015 ozone NAAQS good neighbor SIP submissions . . . reflect[ing] consistency with relevant good neighbor case law and past agency practice implementing the good neighbor provision").  Therefore, "any challenge thereto belongs in the D.C. Circuit."  *ATK Launch*, 651 F.3d at 1200.

Oklahoma also argues that the Final Rule is not nationally applicable by taking EPA's characterization of ozone as a "regional-scale pollution problem" out of context.  *See* Okla. Resp. at 2.  As it has consistently done in other nationally applicable rules, EPA used the term "regional" to describe the nature of ozone pollution because it crosses state borders and affects large portions of the United States.  Final Rule, 88 Fed. Reg. at 9340, 9372; *see, e.g.*, Revised CSAPR Update, 86 Fed. Reg. 23054, 23063 (Apr. 30, 2021) ("Studies have established that ozone formation, atmospheric residence, and transport occur *on a regional scale* (i.e., thousands of kilometers) over much of the eastern U.S.") (emphasis added) (upheld by the D.C. Circuit in *Midwest Ozone Group v. EPA*, 61 F.4th 187 (D.C. Cir.

2023))).  As clearly shown below,[4] EPA's action on each covered state's SIP

submission has consequences beyond each state's borders (and beyond any

arbitrary "local or regional" line Petitioners seek to draw) due to the interstate

nature of ozone pollution:



For the same reason, the Court should also reject Utah's attempt to compare

EPA's approach in the Final Rule to EPA's approaches taken in SIP actions for

other programs, like the regional haze program.  Utah Resp. at 17 & n.9.

---

[4] EPA, Interstate Pollution Linkages Under the Good Neighbor Plan, *available at* https://www.epa.gov/csapr/good-neighbor-plan-2015-ozone-naaqs#maps.

Petitioners offer no support for their claim that the single-state actions they cite are similar to the Final Rule; these examples simply illustrate that EPA does not contest regional circuit venue for locally or regionally applicable actions. *See, e.g.*, *Wyoming v. EPA*, No. 14-9529 (10th Cir.) (challenging EPA's promulgation of state-specific FIP in Wyoming).

Similarly, Petitioners' insistence that EPA's Regional Offices were the decisionmakers because the proposed rules were signed by Regional Administrators does not move the needle. *See* Utah Resp. at 16; Okla. Resp. at 13. The action being challenged here—the Final Rule—was signed by the Administrator of the EPA. *See* Final Rule, 88 Fed. Reg. at 9381. Further, Petitioners discount the myriad ways in which the proposed rules were coordinated at a national level to implement a nationally applicable final action. For example, every proposal (1) relied on modeling files and supporting documents developed by Headquarters and placed in a single Headquarters docket, EPA-HQ-OAR-2021-0663; (2) included identical text explaining EPA's analytical approach with only minor organizational variations, *compare* 87 Fed. Reg. 9798, 9799-9803 (Feb. 22, 2022) (proposing disapproval for Arkansas, Louisiana, Oklahoma, and Texas) *with* 87 Fed. Reg. 9545, 9546-52 (Feb. 22, 2022) (proposing disapproval for Alabama, Mississippi, and Tennessee); and (3) indicated that EPA contemplated finalizing these proposals in a single final action, *see, e.g.*, 87 Fed. Reg. at 9835 n.113. EPA

embarked on a nationally organized effort to address these SIPs in a coordinated

fashion throughout the entire rulemaking process.

In sum, because the Final Rule applies to 21 states across the country on its

face, it is nationally applicable.  Petitioners' challenges must be heard in the D.C.

Circuit.  This Court should decide that issue now rather than carry the issue with

the case.  *See, e.g.*, Order, *Wyo. Ref'g Co. v. EPA*, No. 22-9538, ECF No.

10935421 (10th Cir. Aug. 23, 2022).

## II.    EPA Properly Made and Published a Finding that the Final Rule
##         Is Based on a Determination of Nationwide Scope or Effect.

Even if this Court determines the Final Rule is locally or regionally

applicable, venue remains proper in the D.C. Circuit because the Final Rule is

based on a determination of nationwide scope or effect and EPA so found when it

published the Final Rule.  In arguing that this venue provision does not apply,

Petitioners misrepresent the standard of review, legal standard, and EPA's

determination.

Petitioners cite *2016 Texas*, 829 F.3d at 421 & n.19, to contend that EPA's

determination of nationwide scope or effect is reviewed de novo.  Utah Resp. at

23; PacifiCorp Resp. at 5, 17; Okla. Resp. at 20-21.  But that out-of-circuit case

relied on inapposite case law to support its holding and contravenes the well-

established deference afforded to EPA's record-based decision-making.  *See 2016*

*Texas*, 829 F.3d at 421 (citing *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 392

12

(5th Cir. 2014)), which holds only that courts have an independent obligation to determine their own subject-matter jurisdiction and says nothing about venue determinations, and *2011 Texas*, 2011 WL 710598 at *3-4  and *ATK Launch*, 651 F.3d at 1196-97, both of which discuss only the nationally-applicable provision); *see also ABF Freight Sys. Inc. v. NLRB*, 510 U.S. 317, 324 (1993) ("When Congress expressly delegates to an administrative agency the authority to make specific policy determinations, courts must give the agency's decision controlling weight unless it is arbitrary, capricious, or manifestly contrary to the statute." (internal quotation marks and citation omitted)).  Indeed, the D.C. Circuit has recognized that EPA's determination should be reviewed under a highly deferential standard.  *See Alcoa, Inc. v. EPA*, No. 04-1189, 2004 WL 2713116, at *1 (D.C. Cir. Nov. 24, 2004) (concluding that EPA had "unambiguously determined that the final action . . . has nationwide scope and effect" and that "all petitions for review of th[at] action belong in [the D.C.] Circuit").

Petitioners also mistake the legal standard regarding EPA's finding and publication of a nationwide scope or effect determination and argue that the Court should ensure that EPA is making consistent nationwide scope or effect determinations in like situations.  PacifiCorp Resp. at 14; *see also* Utah Resp. at 25; Okla. Resp. at 17.  But as the D.C. Circuit cogently explains (and as Petitioners agree), "EPA's decision whether to make and publish a finding of nationwide

scope or effect is committed to the agency's discretion" by law because there is "no meaningful standard against which to judge the agency's exercise of discretion." *Sierra Club v. EPA*, 47 F.4th 738, 745-46 (D.C. Cir. 2022) (internal quotation and citation omitted); Utah Resp. at 23. Consequently, EPA's decision to publish a finding in one instance and not in another has no bearing here. EPA has discretion to determine the proper venue and may do so by choosing when to make and publish a finding that its action is based on a determination of nationwide scope or effect. *See Sierra Club*, 47 F.4th at 746.

Petitioners allege that EPA "artificially packag[ed]" state-specific disapprovals into one final action. Utah Resp. at 13. But EPA did no such thing. The Final Rule is not a "mere amalgamation" of local determinations, and instead evinces EPA's reasoned decision to order its docket to efficiently address together like SIP submissions on interstate transport, which required EPA to examine complex, interwoven, and overlapping linkages between and among multiple states. *ATK Launch*, 651 F.3d at 1200; *see supra* Argument I (illustrating with a map that the nature of ozone transport is such that EPA must examine these linkages between and among multiple states). While states, including Utah and Oklahoma, may have used alternative approaches, *see* Final Rule, 88 Fed. Reg. at 9359-60, EPA evaluated them through a national lens, to "ensur[e] national consistency and avoid[] inconsistent or inequitable results," *id.* at 9381.

Petitioners' portrayal of the relevant SIP submissions as state-specific (Utah Resp. at 25; PacifiCorp Resp. at 6-13; Okla. Resp. at 6-13) ignores the reality that the states covered by the Final Rule relied on identical or similar modeling, methodologies, and analyses to evade a conclusion that their emissions significantly contribute to nonattainment or interfere with maintenance of the NAAQS in downwind states. Venue Mot. at 15 n.8 (explaining how EPA uniformly addressed multiple states' arguments related to international emissions). For example, Alabama (which petitioned for review of the Final Rule in the Eleventh Circuit), Arkansas (which petitioned for review of the Final Rule in the Eighth Circuit), Kentucky (which petitioned for review of the Final Rule in the Sixth Circuit), Michigan, Mississippi (which petitioned for review of the Final Rule in the Fifth Circuit), Nevada, Oklahoma, and Utah all attempted to rely on guidance from a separate CAA permitting program to argue that 1 ppb was an appropriate contribution threshold, which EPA uniformly rejected. *See* Final Rule, 88 Fed. Reg. at 9354-59, 9372. And Arkansas, California, Illinois, Indiana, Kentucky, Michigan, Missouri (which has also petitioned for review in the Eighth Circuit), Ohio, Utah, and West Virginia (which has also petitioned for review in the Fourth Circuit) made similar arguments about international emissions and relative contribution, which EPA uniformly addressed. *Id.* at 9378; *cf.* PacifiCorp.

Resp. at 15 (suggesting that Utah uniquely raised international emissions in its submission).

Moreover, states moving to stay the Final Rule in their respective regional courts also raise the same or similar arguments, to which EPA had provided a single, uniform response. *See, e.g.*, Utah Stay Mot. at 12-17, ECF No. 010110823083 (arguing that EPA violated principles of cooperative federalism by rejecting its SIP's chosen modeling and analyses); La. Stay Mot. at 13-16, *Texas v. EPA*, No. 23-60069, ECF No. 112 (same); Tex. Stay Mot. at 16-18, *Texas*, No. 23-60069, ECF No. 31 (same).  Given that covered states provided overlapping reasons for concluding that they did not need to address their impacts on downwind states' ozone levels, EPA's determination as to each state's approach has nationwide scope or effect.  Thus, these overlapping reasons exemplify how keeping petitions for review of the Final Rule in regional circuits risks inconsistencies among courts and inconsistent treatment of downwind states. Although Petitioners cite *New York v. EPA* to contend that the risk of inconsistent results is overblown, Okla. Resp. at 17-18, that case is irrelevant to EPA's determination of nationwide scope or effect as it discusses only the clause in

§ 7607(b)(1) governing "nationally applicable" actions,[5] and in any case, the parties there waived venue.  133 F.3d 987, 990 (7th Cir. 1998).

Therefore, even if the Court were to determine that the Final Rule is local or regional in nature (which it is not), the petitions may only be heard in the D.C. Circuit.

---

[5] For the same reason, Petitioners' citations to *ATK Launch*, 651 F.3d 1194, *NRDC v. Thomas*, 838 F.2d 1224 (D.C. Cir. 1988), and *2011 Texas*, 2011 WL 710598, which all address the clause in § 7607(b)(1) governing "nationally applicable" actions, are irrelevant.  *See* Okla. Resp. at 18.

17

## CONCLUSION

For all the reasons presented in EPA's Venue Motion, and the foregoing reasons, the Court should transfer the petitions for review to the D.C. Circuit or dismiss them.

Respectfully submitted,

TODD KIM
Assistant Attorney General

Of Counsel:

ROSEMARY HAMBRIGHT KABAN
DANIEL P. SCHRAMM
U.S. Environmental Protection Agency
Office of General Counsel
Washington, DC

/s/ *Alexandra L. St. Romain*
ALEXANDRA L. ST. ROMAIN
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
alexandra.st.romain@usdoj.gov

April 19, 2023

## CERTIFICATES OF COMPLIANCE

I hereby certify that this motion complies with the requirements of Fed. R. App. P. 27(d)(2)(C) and the Court's April 17, Order, ECF No. 010110844494, because it contains 3,788 words according to the count of Microsoft Word, excluding the parts of the motion exempted by Fed. R. App. P. 32(f), and therefore is within the word limit of 4,000 words.

I further certify that this motion complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally-spaced font, and is double-spaced, except for headings, block quotes, and footnotes.


Dated:  April 19, 2023                    /s/ *Alexandra L. St. Romain*
                                          ALEXANDRA L. ST. ROMAIN

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing EPA's Consolidated Reply in Support of its Motion to Transfer the Petition for Review to the D.C. Circuit or Dismiss Based on Improper Venue on all registered counsel through the Court's electronic filing system (CM/ECF).


Dated: April 19, 2023                    /s/ *Alexandra L. St. Romain*
                                         ALEXANDRA L. ST. ROMAIN